Nate Meyer
Bar No. 020583
JABURG WILK LAW FIRM
1850 North Central.
Suite 1200
Phoenix, Arizona 85004
Telephone: 602-248-1032
Email: ndm@jaburgwilk.com

Rodger L. Eckelberry
(*Pro hac vice forthcoming*)
Kevin P. Zimmerman
(*Pro hac vice forthcoming*)
Rebecca Schrote
(*Pro hac vice forthcoming*)
BAKER & HOSTETLER LLP
200 South Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone:    614-228-1541
Facsimile:    614-462-2616
Email: reckelberry@bakerlaw.com
          kzimmerman@bakerlaw.com
          rschrote@bakerlaw.com

*Attorneys for Garrison Property and
Casualty Insurance Company*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramona Romes,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Garrison Property and Casualty Insurance Company,<br><br>　　　　Defendants. | No. _____<br><br>Judge: _____<br><br>CASE BELOW:<br>In the Superior Court of the State of Arizona In and for the County of Maricopa, Case No.  CV2023-18074<br><br>**NOTICE OF REMOVAL** |

1

17722-17722-00231\\NDM\JKS\\5847152.1

Defendant Garrison Property and Casualty Insurance Company ("Garrison") respectfully removes to this Court the above-captioned matter from the Superior Court of the State of Arizona in and for the County of Maricopa.  Removal is proper under this Court's diversity jurisdiction, 28 U.S.C. § 1332, 28 U.S.C. § 1441 and 28 U.S.C. § 1446, in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.  Removal is also proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), 28 U.S.C. § 1441(a) and (b), 28 U.S.C. § 1446, and 28 U.S.C. § 1453, because this is a putative class action with more than 100 putative class members that seeks to recover more than $5 million.  In support of this Notice of Removal, Garrison states as follows.

## I.      NATURE OF THE CASE

1.      Plaintiff Ramona Romes filed this lawsuit against Garrison on December 18, 2023, in the Superior Court of the State of Arizona in and for the County of Maricopa, Case No. CV2023-018074, entitled *Ramona Romes vs. Garrison Property and Casualty Insurance Company*.

2.      Plaintiff delivered the Summons and Complaint to the Arizona Department of Insurance and Financial Institutions on December 26, 2023.  *See* Exhibit D at 1 (Summons for First Amended Complaint, showing December 26, 2023, acceptance stamp from the Department of Insurance and Financial Institutions).

3.      The Arizona Department of Insurance and Financial Institutions transmitted the Summons and Complaint to Garrison's designated agent for service, CSC, on December 28, 2023.  *See* Exhibit C at 1.

4.      In the Complaint, Plaintiff alleges that Garrison underpaid her underinsured motor vehicle automobile insurance coverage because it "improperly and unlawfully calculated Reduced Medical Expenses and Reduced Lost Wages as the amount of 'compensatory damages' [Plaintiff] is legally entitled to recover from the underinsured motorist."  Exhibit B (First Amended Class Action Complaint, hereafter "Compl.") ¶¶ 16-23.

5.     Plaintiff further alleges: "Upon information and belief, Defendant [Garrison] routinely sells Uninsured Motorist Coverage, as well as Underinsured Motorist Coverage, and benefits on policies, but fails and/or refuses to pay the proper amount of benefits owed on the policy by calculating compensatory damages using Reduced Medical Expenses and/or Reduced Lost Wages."  Compl. ¶ 30.

6.     From this, Plaintiff asserts claims for declaratory judgment, breach of contract, and bad faith.

7.     Plaintiff also asserts the same claims on behalf of the following putative class of Arizona insureds:

All persons insured under Defendant USAA policies issued in Arizona where the person made an uninsured and/or underinsured motorist claim and Defendant USAA calculated the compensatory damages using Reduced Medical Expenses and/or Reduced Lost Wages.

Compl ¶ 61; *see also id*. ¶¶ 81, 92.

8.     Plaintiff seeks to recover compensatory damages, interest, bad faith penalties, consequential damages, special damages, general damages, a declaration and injunction preventing Garrison from using "Reduced Medical Expenses" and "Reduced Lost Wages," attorney's fees and costs, punitive damages, pre- and post-judgment interest, and "such other and further relief as this Court may deem just and proper.  Compl ¶54 & pgs.18-19.

## II.    GARRISON SATISFIED THE PROCEDURAL REQUISITES FOR REMOVAL

9.     Garrison's removal to this Court is timely.

10.    Plaintiff delivered the Summons and Complaint to the Arizona Department of Insurance and Financial Institutions on December 26, 2023.  Exhibit D.

11.    Under A.R.S. § 20-222(A), the director of the Department was then required to "forward a copy thereof by registered mail to the person last so designated by the insurer to receive process."

12.    Garrison's designated agent of process is Corporation Service Company

("CSC").

13.     CSC received the Summons and Amended Complaint on December 28, 2023. Exhibit C at 1.

14.     CSC's receipt of the Summons and Complaint initiated the 30-day deadline for removal under 28 U.S.C. § 1446(b)(1).  *See Befort v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 18-cv-, 2018 WL 5792339, at *2 (D. Ariz. Nov. 5, 2018) ("[D]istrict courts within the Ninth Circuit have held that, when service of process upon a statutory agent occurs before a defendant's actual receipt of the plaintiff's complaint, the removal clock begins to run upon actual receipt of the complaint by the defendant rather than the earlier service upon a statutory agent."); *O'Bresley v. Farm Bureau Prop. & Cas. Ins. Co.,* No. 18-cv-02553, 2018 WL 6061298, at *2 (D. Ariz. Nov. 20, 2018) (same); *Nucor Corp. v. Emps. Ins. Co. of Wausau*, No. 12-cv-678, 2012 WL 3242279, at *5 (D. Ariz. Aug. 7, 2012) (same); *Spear v. United Sec. Life & Health Ins. Co. of Illinois*, No. 09-cv-1234, 2009 WL 10673451, at *1 (D. Ariz. Aug. 17, 2009) (same).

15.     30 days after December 28, 2023, is Saturday January 27, 2024.  Thus, the deadline for removal is **Monday, January 29**.  *See* Fed.R.Civ.P. 6(a)(1)(C) ("When the period is stated in days or a longer unit of time: . . . (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."); *see also Neal v. Bank of Am., N.A.*, No. CV 12-08104-PCT-FJM, 2012 WL 3638762, at *4 (D. Ariz. Aug. 24, 2012) ("Because the deadline fell on a Saturday, however, defendant had until Monday, June 4, 2012 to remove.").

16.     Garrison filed this Notice of Removal on January 25, 2024, so it is timely.

17.     Venue is proper in this Court because the Superior Court of the State of Arizona in and for the County of Maricopa is located in the District of Arizona.  *See* 28 U.S.C. § 1441(a) (a state-filed civil action subject to federal jurisdiction may be removed "to the district court . . . for the district and division embracing the place where such action is pending").

18.     A civil cover sheet is attached as Exhibit A

19.     As required under 28 U.S.C. § 1446(d) and L.R.Civ. 3.6(a), a copy of this Notice of Removal is being served upon Plaintiffs' counsel, and a copy is being filed with the Clerk of the Superior Court of the State of Arizona in and for the County of Maricopa.

20.     As required under 28 U.S.C. § 1446(a) and L.R. Civ., 3.6(b), Garrison has attached copies of all documents that were previously filed with the state court.  Pursuant to L.R. Civ., 3.6(b), Garrison also identifies the following attached exhibits (if applicable):

(1)     Supplemental Civil Cover Sheet – Exhibit I.

(2)     Most recent state court docket – Exhibit G.

(3)     Operative complaint – Exhibit B.

(4)     Service documents – Exhibit C.

(5)     Answers – *Not applicable.*

(6)     State court orders terminating or dismissing parties – *Not applicable.*

(7)     Notices of appearance – *Not applicable.*

(8)     Pending motions responses, and replies – *Not applicable.*

(9)     Remainder of state court record – Exhibits D-F.

(10)    Verification of the removing party or its counsel that true and complete copies of all pleadings and other documents filed in the state court proceeding have been filed – Exhibit H.

## III.     THE REQUIREMENTS FOR DIVERSITY JURISDICTION ARE SATISFIED

21.     To establish diversity jurisdiction, a defendant must demonstrate diversity of citizenship between the parties and an amount in controversy in excess of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  Both requirements are established here.

### A.     Diversity of citizenship exists.

22.     The insurance policy attached to Plaintiff's Complaint shows that Plaintiff resides at 3931 E. Mia Lane, Gilbert, Arizona.  Compl. Ex. at USAA Poliocy 004.  Plaintiff

is a resident of Arizona.

23.     While Plaintiff refers to the Defendant as "USAA" in the body of the Complaint, the named Defendant (and the entity that issued Plaintiff's Insurance Policy) is Garrison Property and Casualty Insurance Company.  *See* Compl. at 1 & Ex. USAA Policy 001-006.

24.     As Plaintiff alleges, Garrison is a corporation incorporated under the laws of the state of Texas.  Compl. ¶ 2.  Garrison's principle place of business is San Antonio, Texas.

25.     Therefore, this is an action between "citizens of different States" as required by 28 U.S.C. § 1332(a).

**B.     The amount in controversy is satisfied.**

26.     A defendant may remove a case to federal court pursuant to 28 U.S.C. § 1332(a) if the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

27.     "In measuring the amount in controversy, a court must assume that the allegations in the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint."  *Forever Living Prod. U.S. Inc. v. Geyman*, 471 F. Supp. 2d 980, 986 (D. Ariz. 2006).  In other words, "the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

28.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

29.     "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."  *Id*.  So, "when a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied."

*Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019).

> **1.** ***Plaintiff's pre-suit demand for the full $100,000 policy limits of her underinsured motorist coverage establishes the amount in controversy.***

30.      The limit of liability for underinsured motorist coverage in Plaintiff's policy is $100,000 per person and $300,000 per collision.  Compl. ¶ 16; Compl. Ex. 1 at USAA Policy 004.[1]

31.      Prior to the lawsuit, Plaintiff issued a demand to Garrison for the full "available policy limits" under the policy ($100,000).  Compl. ¶ 20.  The demand asserted that Plaintiff was not liable for the underlying crash, and detailed the medical treatment, lost wages, and pain and suffering that Plaintiff alleged to have suffered from the crash.  *See* Exhibit J (Plaintiff's policy limit demand, redacted to remove PII and medical information).  The demand concluded: "Because of the seriousness of this crash and Ramona's long physical and emotional recovery, we demand the underinsured policy limit of $100,000.  Please send your check for the UIM policy limits of $100,000 made payable to [Plaintiff's counsel]."  *Id.* at 13.

32.      Notwithstanding Plaintiff's $100,000 policy limits demand, Plaintiff alleges that Garrison only offered "$5,000 in UIM benefits to [Plaintiff]."  Compl. ¶ 21.

33.      Plaintiff's settlement demand is "relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."  *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir. 2002); see also *John Haller, et al., Plaintiffs, v. Auto-Owners Ins. Co., Defendant.*, No. 20-cv-01606, 2021 WL 3732763, at *2 (D. Ariz. Aug. 24, 2021) (settlement demand was evidence of amount in controversy for an insurance dispute).  Plaintiff's pre-suit settlement demand in this case included eleven pages of single-spaced argument as to why Plaintiff believed that a policy limits demand was reasonable— including citations to specific medical bills, evidence of lost wages, and a detailed

---

[1] Plaintiff's Complaint contains a typo stating that the aggregate limit per accident is "$30,000."  However, the Policy itself makes clear that the aggregate limit for Part C Uninsured Motorist coverage is "$300,000" for each accident.  Compl. Ex. at USAA Policy 004.

discussion of Plaintiff's alleged ongoing pain and suffering.  *See* Exhibit J; *see also Haldiman v. Cont'l Cas. Co.,* No. 13-cv-00736, 2013 WL 3967622, at *3 (D. Ariz. Aug. 2, 2013) ("Under the tort theory of bad faith, future benefits are included as compensatory damages" and these future benefits may be "considered when calculating the amount in controversy.").

34.   The demand is therefore a reasonable estimate of plaintiff's claim for purposes of calculating the amount in controversy.

35.   Some cases have questioned the evidentiary value of settlement demands, believing that particular demands reflect "puffing and posturing" rather than a specific quantification of damages.  *See, e.g., Jackson v. Wal-Mart Stores, Inc*., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009).

36.   However, this argument makes little logical sense.  A settlement offer may well involve puffery over a plaintiff's *expected value* in a litigation (possible damages * probability of success - costs of litigation), but the touchstone for determining the amount in controversy is the maximum *possible damages* that can be recovered.  *See Arias*, 936 F.3d at 927.  It makes no sense for a plaintiff to offer a settlement demand with puffery above the *maximum possible* amount that the plaintiff could recover, because such a demand would be dead on arrival.  In such situations, the defendant is always better off rolling the dice in litigation rather than accepting the offer (particularly where, as here, Plaintiff demands attorney's fees accounting for the transaction costs of litigating the case).

37.   Judge Easterbrook of the Seventh Circuit Court of Appeals described the point well, explaining why a settlement demand *below* the amount in controversy ($60,000) could evidence maximum *possible* damages above the jurisdictional bar:

> To the extent that any event after the date of removal can shed light on the jurisdictional question, the willingness to accept $60,000 supports a conclusion that the "controversy" exceeds $75,000. Rising–Moore did not offer to take $60,000 if a jury should decide in his favor and nothing otherwise; he wanted $60,000 *with certainty*, which implies that the stakes at trial comfortably exceed the minimum. Plaintiffs win about half of all tort suits that go to trial. [Citations omitted.] If Rising–Moore had a 50% likelihood of a $120,000 verdict at trial, he would offer to accept $60,000 with

certainty, which has the same expected value; both sides then could save legal expenses. If he is risk averse, he would be willing to accept less than half of the anticipated award: then an offer to take $60,000 might imply that the stakes were $150,000. If his lawyer had private knowledge suggesting that the chance of prevailing was less than 50%, then the anticipated verdict implied by the offer (if a jury found in plaintiff's favor) would be even higher. So, for example, a risk-averse plaintiff who thought that he had a one-in-three chance of winning $200,000 at trial would take a sure $60,000 happily. Only if Rising–Moore were risk-neutral and had more than an 80% chance of winning a favorable verdict would the $60,000 offer imply that the full controversy is under $75,000.

*Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 817 (7th Cir. 2006); *see also Brunacini v. Valencia-Bosque Farms Phillips 66*, No. 99-cv-642, 1999 WL 35809390, at *3 (D.N.M. Aug. 23, 1999) ("Brunacini argues that the offer of settlement may not be considered in determining the jurisdictional amount. The argument defies reason. An offer of settlement is intended to be a compromise, that is, a discount from the value of the claim. Offers of settlement are compelling evidence of the minimum amount in controversy.").

38.     Here Plaintiff's pre-suit demand is *above* the minimum jurisdictional limit.

39.     Plaintiff's pre-suit demand for $100,000 in UIM coverage therefore satisfies the $75,000 jurisdictional prerequisite—even without considering the additional bad faith damages, punitive damages, and attorney's fees plaintiff demands (discussed below).  *See Wood v. State Farm Mut. Auto. Ins. Co.*, No. 15-cv-00525, 2015 WL 3953909, at *2 (D. Ariz. June 29, 2015) (plaintiff's pre-suit demand letter requesting the full $100,000 limit of her policy's underinsured motorist benefits coverage evidenced an amount in controversy over $75,000, particularly where the complaint also sought additional punitive damages and attorney's fees); *Gonzales v. Samgorodsky*, No. 15-cv-00172, 2015 WL 9581870, at *3 (D. Ariz. Dec. 31, 2015) (plaintiff's pre-suit demand letter to insurer outlining incurred medical expenses and lost wages satisfied amount in controversy requirement).

## 2. *The amount in controversy is satisfied even if the Court disregards the pre-suit demand.*

40.     Even if the Court were to disregard the pre-suit demand for full policy limits,

other allegations in the complaint also establish that the amount in controversy is satisfied. Putting aside the ongoing injuries, lost wages, and pain and suffering that Plaintiff detailed in her demand letter, she also pleads that she already suffered "medical expenses in excess of $30,000" and "lost wages in the amount of $15,681" as a "direct and proximate result" of the automobile accident.

41.     Again, however, Garrison is alleged to have offered only $5,000 of UIM benefits.  Compl. ¶ 21.

42.     So, Plaintiff's asserted damages *just* from the alleged breach of contract would be $40,681—the difference between the damages Plaintiff claims to have suffered and the amount of UIM coverage Garrison allegedly offered using its "Reduced Medical Expenses" and "Reduced Lost Wages."  ($30,000 medical expenses + $15,681 lost wage - $5,000 UIM offer = $40,681 in damages.)

43.     But Plaintiff does not seek only breach of contract damages; she also seeks recovery for bad faith, punitive damages, attorney's fees, and injunctive relief.  Even using the conservative estimate of $40,681, when any one of these additional components of plaintiff's complaint are added to the compensatory damages, the $75,000 amount in controversy is satisfied.  Altogether, this case more than surpasses the individual jurisdictional threshold.  *See Haldiman v. Cont'l Cas. Co.*, 666 F. App'x 612, 613 (9th Cir. 2016) (affirming denial of motion to remand where plaintiff sought the policy's full benefit plus punitive damages, plus attorney's fees).

### 3. *The amount in controversy is satisfied by adding the possible contractual damages to punitive damages.*

44.     Plaintiff's Complaint expressly demands punitive damages.  Compl. ¶ 54.

45.     The amount in controversy includes any punitive damages that a plaintiff could recovery for insurance bad faith.  *Wood*, 2015 WL 3953909, at *2; *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir.2001) ("It is well established the punitive damages are part of the amount in controversy in a civil action."); *Filasky v. Preferred Risk Mutual Ins. Co.*, 152 Ariz. 591, 598, 734 P.2d 76, 83 (Ariz. 1987) (Arizona law authorizes

1    an award of punitive damages in insurance bad faith cases.).

2    46.    One way to estimate punitive damages for the amount in controversy is to

3    "cite a case based on the same or a similar statute in which the jury or court awarded punitive

4    damages based on the punitive-compensatory damages ratio relied upon by the defendant."

5    *Greene v. Harley-Davidson, Inc*., 965 F.3d 767, 772 (9th Cir. 2020); *see also Hacker v.*

6    *Aetna Life Ins. Co.,* No. 18-cv-334, 2019 WL 638369, at *2 (E.D. Ky. Feb. 13, 2019) ("To

7    measure the amount in controversy based on claims for unspecified sums of attorney fees,

8    punitive damages, and emotional / pain-and-suffering damages, courts permit removing

9    parties to rely, for estimation purposes, on reasonable multipliers / percentages.")

10    47.    Arizona Courts have awarded punitive damages of at least a 1:1 ratio of

11    punitive-to-compensatory damages for bad faith claims in insurance disputes.  *See, e.g.,*

12    *Nardelli v. Metro. Group Prop. & Cas. Ins. Co*., 230 Ariz. 592, 277 P.3d 789 (Ct. App.

13    2012) (in automobile insurance dispute, jury awarded $155,000 in compensatory damages

14    and court of appeals affirmed a reduced award of $155,000 in punitive damages); *see also*

15    *Nasiri v. Allstate Indem. Co*., 41 F. App'x 76, 78 (9th Cir. 2002) (affirming denial of remand

16    because in "similar bad faith cases, damages for emotional distress ranged between $32,000

17    and $245,000, while punitive damages ranged from $100,000 to well over $1,000,000").

18    48.    Of course, punitive damages ratios are often much higher than 1:1, and courts

19    frequently permit higher multiples when calculating the amount in controversy.  *See, e.g.,*

20    *Walker v. Old Reliable Cas. Co.*, No. 13-cv-04122, 2014 WL 6872903, at *3 (W.D. Ark.

21    Dec. 4, 2014) ("Courts have found punitive damage multipliers of up to six to be acceptable

22    when considering the availability of punitive damages in the CAFA amount-in-controversy

23    context"); *White v. Lawrence*, No. 14-cv-429, 2015 WL 13651167, at *4 (D.N.M. Sept. 11,

24    2015) (a "4 to 1 punitive-damages-to-alleged-compensatory-damages ratio" was used to

25    cacluate amount in controversy); *Corey v. Builders Mut. Ins. Co*. No. 10-cv-00408, 2010

26    WL 11643184, at *4 (D.S.C. May 7, 2010) (finding the jurisdictional amount in controversy

27    satisfied by applying a 9:1 punitive damages multiplier); *Blaylock v. Mutual of N.Y. Life*

28    *Ins. Co*., 228 F.Supp.2d 778, 786 n. 5 (S.D. Miss. 2002) ("[T]he Fifth Circuit recently

described as 'very conservative' a district court's application of a 6:1 ratio of punitive damages to compensatory damages in calculating an amount in controversy . . . ").

49.     Still, even using "the most conservative single-digit ratio, a one-to-one ratio," Plaintiff's request for punitive damages pushes this case past the jurisdictional threshold. *Mallin v. Progressive Nw. Ins. Co*., No. 06-cv-593, 2006 WL 8441138, at *3 (D. Ariz. Apr. 28, 2006) (finding the amount in controversy satisfied based on a 1:1 ratio of punitive damages for an insurance bad faith claim.); *see also Hoarau v. Safeco Ins. Co. of Am*., No. 17-cv-01594, 2017 WL 3328078, at *3 (D. Ariz. Aug. 4, 2017) (holding that "a punitive damages award would more likely than not be well over the $10,000 required to push the amount in controversy over the $75,000 threshold").  $40,681 (the conservative estimate of Plaintiff's claimed breach of contract damages), plus an additional $40,681 in punitive damages = $81,362.  This is greater than the $75,000 jurisdictional threshold.

### 4. *The amount in controversy is satisfied by adding the possible contractual damages to bad faith tort damages.*

50.     In addition to punitive damages, Plaintiff may also recover traditional tort damages for an insurance bad faith claim, such as "damages for emotional distress, humiliation, inconvenience, or anxiety."  *Christie's Cabaret of Glendale LLC v. United Nat'l Ins. Co*., 562 F. Supp. 3d 106, 122 (D. Ariz. 2021); *see also Haire v. Liberty Ins. Corp*., No. CV-20-00686, 2020 WL 5088071, at *3 (D. Ariz. Aug. 28, 2020) (bad faith claim is "different from the breach-of-contract claim" and "could result in the recovery of additional categories of damages").

51.     Typically, "an award of tort damages at least twice the amount of contract damages is a reasonable estimate for determining the amount in controversy in an insurance bad faith case."  *Treon v. Aetna Life Ins. Co*., No. 20-cv-00529, 2020 WL 2537484, at *3 (D. Ariz. May 19, 2020).

52.     This ratio is supported by Arizona verdicts.  *See, e.g., Simms v. State Farm Fire & Casualty Co*., JVR No. 468172, 2006 WL 4551856 (D. Ariz. June 29, 2006) (jury verdict stemming from insurer's denial of property insurance claim awarded $41,000 for

12

breach of contract and $100,000 for bad faith); *Steele v. Am. Family Mut. Ins. Co*., 2008 WL 6090680 (Ariz. Super. Ct. Dec. 19, 2008) (jury verdict stemming from insurer's underpayment of property insurance claim awarded $75,265.59 for breach of contract and $100,000 for bad faith); *see also Leavey v. UNUM/Provident Corp*., No. 02-cv-2281, 2006 WL 1515999, at *21 (D. Ariz. May 26, 2006) (after remitter of unconstitutionally excessive awards, district court affirmed pain and suffering damages of $1.2 million and punitive damages of $3 million stemming from award of $809,028 in future policy benefits for disability insurance policy); *McClure v. Country Life Ins. Co*., 326 F. Supp. 3d 934, 939 (D. Ariz. 2018) (awarding "$1,290,000.00 for emotional distress, humiliation, inconvenience, and anxiety; $45,000.00 for the loss of enjoyment of life; and $173,593.76 for policy benefits" under disability insurance policy) , *aff'd*, 795 F. App'x 548 (9th Cir. 2020).

53.     Again, even using a more conservative 1:1 ratio of bad faith damages to policy damages, the amount in controversy is satisfied (without including punitive damages or attorney's fees).  *See Klein v. Safeco Ins. Co. of Am*., No. 20-cv-02432, 2021 WL 3518717, at *2 (D. Ariz. Feb. 1, 2021) (where plaintiff sought $41,858.65. in compensatory damages in insurance dispute, the "value of Plaintiffs' bad faith claim would more likely than not increase the total amount in controversy to over $75,000"); *Haire*, 2020 WL 5088071, at *5 (where plaintiff sought $54,297.68 in compensatory contract damages, separate bad faith claim "easily establishes that the amount of controversy in this action—even before considering Plaintiff's claims for attorneys' fees, costs, and punitive damages—exceeds the $75,000 jurisdictional threshold").

## **5. *The amount in controversy is satisfied by adding the possible contractual damages to attorney's fees.***

54.     Plaintiff also demands attorney's fees pursuant to A.R.S. 12-341.01.  Compl. at pg. 19 ¶ 13.

55.     Attorneys' fees are included in the amount in controversy where an underlying statute authorizes such an award, even if the award of fees is discretionary.  *alt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir. 1998).

13

56.     Plaintiff "could potentially recover her attorneys' fees under Arizona law pursuant to A.R.S. § 12–341.01 since this is a contested action arising out of a contract." *Wood*, 2015 WL 3953909, at *2 (including consideration of attorney's fees in insurance contract dispute).

57.     The total amount of attorneys' fees potentially at stake—not just those incurred at the time of removal—are included in the calculation. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794-95 (9th Cir. 2018).

58.     Again, putting aside Plaintiff's policy limit demand, punitive damages, and bad faith damages, Plaintiff's complaint asserts that she is entitled to $40,681 in contractual damages.  So, if it is possible for Plaintiff to recover more than $34,319 in fees, the jurisdictional threshold is satisfied ($40,681 + $34,319 = $75,000).  *See Lewis v. Eli Lilly & Co.*, No. 19-cv- 05740, 2020 WL 5210815, at *3 (D. Ariz. Sept. 1, 2020) (finding that "attorneys' fees, together with the alleged contract, compensatory, and punitive damages, more than satisfy the amount in controversy requirement" even where a specific).

59.     $34,319 is well below the possible fees that Plaintiff could recover, based on Plaintiff's counsel's likely rates and the hours necessary to litigate a case of this nature.

60.     According to the website for Plaintiff's counsel, Justin Henry, counsel is a "top injury lawyer with extensive trial experience" and a "master appellate lawyer, having briefed, argued and prevailed in the Arizona Court of Appeals, Arizona Supreme Court, New Mexico Court of Appeals and the Ninth Circuit Court of Appeals."  *See* https://www.brettslavicek.com/the-firm/justin-henry/.  Plaintiff's counsel graduated from Arizona State University School of Law in 2009, and he has therefore been practicing for fifteen years. *Id*.

61.     The average hourly rate for attorneys in Arizona with 10-19 years of practice is $340.  *See* Carol Rose, *Arizona Lawyers Report on Economics of Practice*, Ariz. Att'y, December 2022, 59-DEC Ariz. Att'y 14, at *15.

62.     That is likely a conservative estimate for a class action such as this, because the average hourly rate for plaintiff's attorneys with 12-15 years in *class actions* is $501-

14

600.  *See Survey: Class Action Defense Rates Keep Pace with Plaintiffs'*, NATIONAL ASSOCIATION OF LEGAL FEE ANALYSIS (March 4, 2020), available at: https://www.thenalfa.org/blog/survey-class-action-defense-rates-keep-pace-with-plaintiffs-rates-in-2020/.

63.     Courts in this district have also approved market rates for attorneys in the range of $375 - $500 for attorneys representing insureds in insurance coverage disputes. *See Lexington Ins. Co. v. Scott Homes Multifamily Inc*., No. 12-cv- 02119, 2016 WL 5118316, at *15 (D. Ariz. Sept. 21, 2016) (collecting cases to approve hourly rates from $375.00 to $500.00 per hour for partners representing insured in individual insurance coverage dispute as consistent with "market rates in the Phoenix area").

64.     Still, using a conservative average hourly rate of $340, plaintiff's counsel need only spend 101 hours on this putative class action to satisfy the amount in controversy—without considering bad faith damages or punitive damages. ($40,681 + (101*$340) = $75,021.)

65.     101 hours is a fraction of the time that Plaintiff's counsel (and any co-counsel) will likely spend litigating this case.  It assumes that Plaintiff will spend only about 5 hours on each of the following (non-exhaustive) case tasks: (1) factual investigation, (2) legal research, (3) drafting the complaint, (4) responding to Rule 12 motions, (5) drafting discovery requests, (6) responding to discovery requests, (7) document productions, (8) preparing for defendants' depositions, (9) conducting defendants' depositions, (10) preparing for plaintiff's deposition, (11) defending plaintiff's deposition, (12) coordinating expert witnesses, (13) presenting expert witness for deposition, (14) deposing opposing expert witnesses, (15) class certification briefing, (16) summary judgment briefing, (17) pretrial preparation, (18) motions in limine and (19) pre-trial evidentiary submissions, and (20) trial.[2]

66.     Plaintiff's lawyers in class actions often spend ***thousands*** of hours litigating the case.  *See In re Banner Health Data Breach Litig*., No. 16-cv-02696, 2020 WL

---

[2] 101 hours / 20 tasks = 5.05 hours per task.

12574227, at \*6 (D. Ariz. Apr. 21, 2020) (Approving a lodestar of over $3,457,746.50, based on 6,532.80 hours spent litigating class action.); *Harris v. Wells Fargo Bank, N.A.*, No. 17-cv-01146, 2019 WL 13254887, at \*8 (D. Ariz. May 13, 2019) (awarding $1,388,291.52 in fees after 1,630 hours of work by the time of class settlement in employment class action); *see also Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (reversing the district court's decision to *reduce* a class action loadstar calculation by 241 hours without adequate explanation).

67.     Even if Plaintiff were to proceed only individually, his attorney's fees would almost certainly surpass $35,000 by the end of the case.  *See Klein v. Scottsdale Healthcare Hospitals*, No. CV 2018-015370, 2020 WL 7417188, at \*3 (Ariz. Super. Aug. 11, 2020) (awarding this Plaintiff's counsel $86,170.10 in fees at the conclusion of a non-class litigation); *see also Straub v. Infinity Ins. Co*., No. C20155552, 2019 WL 2393930, at \*2 (Ariz. Super. Apr. 18, 2019) (awarding $149,000 in fees in individual insurance dispute, even after reductions for excessive rates, excessive billing, and hours spent litigating an unsuccessful extra-contractual claim); *Webb v. Farm Bureau Property and Cas. Ins. Co*., No. CV 2013-015761, 2016 WL 1726626, at \*2 (Ariz.Super. Jan. 27, 2016) (awarding $181,232.00 in fees where plaintiff failed to prove breach of contract but succeeded on bad faith claim, even where "the bad faith claim did not pose a novel legal issue"); *Kilduff v. Farm Bureau Mutual Insurance Co*., No. CV 2010-026878, 2013 WL 2295828, at \*4 (Ariz. Super. Jan. 22, 2013) (awarding $629,836 in attorneys' fees to the prevailing plaintiff in a breach of contract and insurance bad faith case).

68.     Adding the contractual damages to the likely attorney's fee award, this case satisfies the $75,000 jurisdictional prerequisite.

### 6. *Plaintiff's designation of this case as a "Tier 3" case further evidences an amount in controversy over $75,000.*

69.     Plaintiff certified that her case is a "Tier 3" discovery case under Rule 26.2 of the Arizona Rules of Civil Procedure.  Compl. at pg. 17.

70.     Rule 26.2 specifies different levels of discovery that a party may take in their

16

case, depending on the "tier" to which the case is assigned.  Ariz. R. Civ. P. 26.2(a) ("This rule explains how much discovery a party may take in their case. The amount of discovery a party may take is limited by the tier to which their case is assigned.").

71.     Unless a tier is assigned by motion, stipulation, or placement by a court, cases "are deemed to be assigned a tier based on the damages claimed in the action."  Ariz. R. Civ. P. 26.2(c)(3).

72.     By designating her case as a "Tier 3" case, Plaintiff is therefore "claiming $300,000 or more in damages" *excluding* "claims for punitive damages, interest, attorney's fees in the case to be tiered, and costs."  Ariz. R. Civ. P. 26.2(c)(3)(C) & (e).

73.     Designating this case as "Tier 3" is additional "evidence that Plaintiff valued his damages at $300,000 or more." *Haire v. Liberty Ins. Corp*., No. 20-cv-00686, 2020 WL 5088071, at *6 (D. Ariz. Aug. 28, 2020); *see also Vondran v. Antonelli*, No. CV-22-cv-00790, 2022 WL 2665943, at *1 (D. Ariz. July 11, 2022) (finding the amount in controversy satisfied based on Plaintiff's designation of the case as a "Tier 3" case and plaintiff's $105,000 settlement offer); *Cutler v. Rural/Metro Fire Dep't Inc*., No. CV-18-00383-TUC-JCH, 2021 WL 9782704, at *2 (D. Ariz. Sept. 30, 2021) (finding the amount in controversy satisfied, in part, based on proposed discovery that would only be permitted under tier 3)

74.     Plaintiff's designation of this case as a "Tier 3" case there provides further evidence that the $75,000 jurisdictional amount in controversy is satisfied.

* * *

75.     In conclusion, Plaintiff's request for relief "exceeds the sum or value of $75,000, exclusive of interest and costs" as required under 28 U.S.C. § 1332(a).

76.     Plaintiff's settlement letter shows that she values her underinsured motorist claim at over $100,000 (the full limits of her UIM coverage).

77.     Alternatively, she pleads $40,681 in allegedly uncompensated injuries.  When coupled with *any one of* her requests for punitive damages, bad faith tort damages, or attorney's fees, the amount in controversy passes the $75,000 jurisdictional threshold.

78.     Altogether, Plaintiff's claims more than satisfy the individual jurisdictional

threshold. *See Haller*, 2021 WL 3732763, at *3 (contract demand of $64,000 plus additional unspecified amounts for bad faith and attorney's fees satisfied amount in controversy); *Pompa-Monreal v. Coast Nat. Ins. Co.*, No. CV 12-01431-PHX-FJM, 2012 WL 3686888, at *1 (D. Ariz. Aug. 27, 2012) (contract dispute over $62,236.16, plus the possibility of attorney's fees and punitive damages made it "more likely than not that the jurisdictional amount will be met").

## IV. THE REQUIREMENTS FOR REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT ARE SATISFIED

79.     Plaintiff's Complaint also satisfies the jurisdictional requirements of the Class Action Fairness Act ("CAFA").

80.     CAFA "significantly expanded federal jurisdiction in diversity class actions" and "was designed to restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quotations omitted).

81.     So, "no antiremoval presumption attends cases invoking CAFA," and "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* (quoting *Dart Cherokee*, 574 U.S. at 89); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively.").

82.     Under CAFA, this Court has original jurisdiction over any asserted class action[3] that: (1) includes at least one class member whose citizenship is diverse from that of the defendant (minimal diversity); (2) involves an aggregate amount in controversy of $5 million or more, exclusive of interest and costs; and (3) has at least 100 putative class

---

[3] CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Plaintiffs titles her Complaint a "Class Action Complaint" and seek certification of a class of Arizona insureds under Rule 23 of the Arizona Rules of Civil Procedure. Compl. ¶¶ 60-92.

members.  *See* 28 U.S.C. § 1332(d), as amended by The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4.  Each requirement is satisfied here.

**A.     The Parties to this case are minimally diverse.**

83.     CAFA's minimal diversity requirement is satisfied.

84.     The insurance policy attached to Plaintiff's Complaint shows that Plaintiff is a resident of the state of Arizona.  Compl. Ex. at USAA Poliocy 004.

85.     Defendant Garrison is a corporation incorporated under the laws of the state of Texas with its principle place of business in San Antonio, Texas.  *See* Compl. ¶ 2

86.     Because Plaintiffs is a citizens of a state other than Texas, the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is satisfied.

**B.     The class claims place more than $5 million in controversy.**

87.     CAFA confers original jurisdiction to the federal district courts of class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  *See* 28 U.S.C. § 1332(d)(2).

88.     "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(d)(6).

89.     Again, the amount in controversy is not a prediction of what Plaintiff will *likely* recover in the case.  *See Greene*, 965 F.3d at 772 ("amount in controversy is the 'amount *at stake*,'" which "does not mean likely or probable liability; rather, it refers to possible liability").  Instead, "a court must assume that the allegations in the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Forever Living*, 471 F. Supp. 2d at 986; *see also Jauregui*, 28 F.4th at 993 ("[A] CAFA defendant's amount in controversy assumptions in support of removal will always be just that: *assumptions*.")

90.     As explained above, the conservative estimate of breach of contract damages alleged in Plaintiff's Complaint is $40,681—the difference between the medical expenses and lost wages Plaintiff claims to have incurred and the amount of UIM coverage Garrison

allegedly offered using its "Reduced Medical Expenses" and "Reduced Lost Wages."

91.    Plaintiff purports to bring this case as a class action, alleging that she is "in a factual and legal posture *identical* to the Class Members." Compl. ¶ 68 (emphasis added); *see also id.* ¶ 87 ("[T]he facts related to the dispute are remarkably uniform"). By requesting class certification, Plaintiff also believes that her claims "are typical of the claims or defenses of the class." Ariz. R. Civ. P. 23(a)(3).

92.    As to the size of the class, Plaintiff alleges that "the class consists of at least hundreds of insureds." Compl. ¶ 63 ("Upon information and belief, Defendant [Garrison] routinely calculates compensatory damages using Reduced Medical Expenses and/or Reduced Lost Wages").

93.    Because Plaintiff believes that she is "in a factual and legal posture identical to the Class Members," (Compl. ¶ 68) the amount in controversy can be estimated by generalizing Plaintiff's own damages across the putative class. *See In re Blackbaud, Inc*., No. 20-mn-02972, 2021 WL 1940581, at *5 (D.S.C. May 14, 2021) (generalizing the plaintiff's estimated damages to each member of the class because the plaintiff "asserted that his claims were 'typical' of the entire class"); *Alper v. Select Portfolio Servicing, Inc*., No. 19-cv-10436, 2019 WL 3281129, at *3 (D. Mass. July 19, 2019) (same); *Argentine v. Bank of Am. Corp.*, No. 15-cv-957, 2015 WL 3793868, at *2 (M.D. Fla. June 18, 2015) (same).

94.    Using the estimate of contract damages from Plaintiff's Complaint (as opposed to the damages requested in her pre-suit demand) and the smallest possible number of putative class members consistent with Plaintiff's own estimate of the size of the class ("hundreds"), there is over $5,000,000 in controversy. Plaintiff's own damages, $40,681, times 200 class members equals $8,136,200 in class breach of contract damages. *See LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (establishing the amount in controversy by generalizing the fuel costs from one quarter over the entire four-year class period); *Waller v. Hewlett-Packard Co.*, No. 11-cv-0454, 2011 WL 8601207, at *3 (S.D. Cal. May 10, 2011) (establishing the amount in controversy by generalizing the

20

sales figures from one specific California retailer to all California retailers, combined)

95. Again, however, Plaintiff does not only seek compensatory damages. Plaintiff also seeks damages for bad faith, punitive damages, and attorney's fees on behalf of the class. Compl. ¶¶ 66(v), (viii)-(x), 88, 92.

96. Using the conservative 1:1 estimates of additional bad faith damages and punitive damages discussed above, Plaintiff's class claims result in well over $5,000,000 in controversy:

| Contractual class claims = | $8,136,200 |
|---|---|
| *Plus* 1:1 addition for bad faith damages (+$8,136,200) = | $16,272,400 |
| *Plus* 1:1 addition for punitive damages (+$8,136,200) = | $24,408,600 |

97. Again, Plaintiff also demands attorney's fees. Compl. at pg. 19 ¶ 13.

98. While the Ninth Circuit has not adopted "a per sue rule" that the amount of attorney's fees in controversy in a class action is 25%, "such an estimate might be reasonable." *Arias*, 936 F.3d at 928; *see also Greene*, 965 F.3d at 774 n.4 (finding a 25% attorney fee estimate reasonable for calculating the amount in controversy because plaintiff's attorney sought 35% in a similar case).

99. For example, the 25% rule may not be applicable in cases where a "court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Fritsch*, 899 F.3d at 796.

100. However, that is not the situation here. A 25% estimate is reasonable in this case because the attorney fee statute permits Plaintiff to recover attorney's fees for *each* of her successful claims stemming from the underlying insurance contract. *See Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 544 (1982) ("Clearly, the tort of bad faith cannot be committed absent the existence of an insurance contract and a breach thereof. Because the existence of the tort is so intrinsically related to the contract, we conclude that an action

21

alleging insurer's bad faith is one 'arising out of a contract' within the meaning of § 12-341.01(A)").

101.   A 25% attorney's fee estimate is also reasonable in this case because courts in Ninth Circuit assessing insurance class action settlements have concluded that attorney fee awards "between 20-30%" of the total settlement are within the "usual range" for class actions. *Jimenez v. Allstate Ins*. Co., No. 10-cv-8486, 2021 WL 4316961, at *10-13 (C.D. Cal. Sept. 16, 2021) (approving fees amounting to 33% of the gross settlement fund, and collecting similar cases with similar fee percentages); *Etter v. Allstate Ins. Co*., No. 17-cv-00184, 2018 WL 5791883, at *5 (N.D. Cal. Nov. 4, 2018) (approving an award of 25% of the gross settlement); *see also In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 303 (3d Cir.2005) (noting a study done by the Federal Judicial Center that found a median percentage recovery range of 27-30% for all class actions resolved or settled over a four-year period).

102.   Adding an additional 25% of attorney's fees to the amounts calculated above results in an amount in controversy for the class of $30,510,750.  ($24,408,600 * 1.25 = $30,510,750.)

103.   The minimum jurisdictional amount requirement of $5,000,000 is satisfied.

**C.     There are at least 100 proposed class members.**

104.   28 U.S.C. § 1332(d)(5) requires at least 100 proposed class members.

105.   Plaintiff, herself, pleads that "the class consists of at least hundreds of insureds."  Compl. ¶ 63 ("Upon information and belief, Defendant [Garrison] routinely calculates compensatory damages using Reduced Medical Expenses and/or Reduced Lost Wages").

106.   This satisfies 28 U.S.C. § 1332(d)(5).

**D.     The CAFA exceptions do not apply**

107.   The exceptions to CAFA do not apply because the only Defendant (Garrison) is a Texas citizen, not an Arizona citizen. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II) (local controversy exception requires at least one defendant to be a citizen of the State in which

22

the action was filed); § 1332(d)(4)(B) (home state controversy exception has the same requirement); 28 U.S.C. § 1332(d)(3) (discretionary exception also requires primary defendants to be citizens of the State in which the action was filed).

## V.   RESERVATION OF RIGHTS

108.   Garrison intends no admission of fact, allegation, claim, liability or wrongdoing by this Notice of Removal, and Garrison expressly reserves all defenses, motions, and pleas including, without limitation, objections to the sufficiency of Plaintiffs' pleadings and the propriety of class certification.

109.   Garrison further reserves the right to submit additional evidence in support of the Notice of Removal, including as may be necessary to address and refute any contentions set forth in a motion to remand. *See Dart Cherokee*, 574 U.S. at 89 ("Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.")

WHEREFORE, Garrison respectfully requests that this Court assume full jurisdiction over this action.


Dated:  January 25, 2024                    Respectfully submitted,



By:   */s/ Nate Meyer*
Nate Meyer
JABURG WILK LAW FIRM
1850 North Central.
Suite 1200
Phoenix, Arizona 85004
Telephone: 602-248-1032
Email: ndm@jaburgwilk.com

Rodger L. Eckelberry
(*Pro hac vice forthcoming*)
Kevin P. Zimmerman
(*Pro hac vice forthcoming*)
Rebecca N. Schrote
(*Pro hac vice forthcoming*)
BAKER & HOSTETLER LLP

17722-17722-00231\\NDM\JKS\5847152.1

200 Civic Center Drive
Suite 1200
Columbus, OH  43215-4138
Telephone:    614.228.1541
Facsimile:    614.462.2616

*Attorneys for Garrison Property and Casualty Insurance Company*

24

17722-17722-00231\\NDM\\JKS\\5847152.1

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on this 25th day of January, I filed the foregoing electronically

3

through the CM/ECF system, and mailed and emailed a service copy to the following

4

counsel of record:

5

6

7

8

Justin Henry
THE SLAVICEK LAW FIRM
5500 NORTH 24TH STREET
PHOENIX, ARIZONA 85016
justin@slaviceklaw.com

9

10

/s/ Jennifer Smith

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17722-17722-00231\\NDM\\JKS\\5847152.1