Brett L. Slavicek (No. 019306)
James Fucetola (No. 029332)
Justin Henry (No. 027711)
**THE SLAVICEK LAW FIRM**
5500 North 24th Street
Phoenix, Arizona 85016
Telephone: (602) 285-4425
Fax: (602) 287-9184
Email: brett@slaviceklaw.com
        james@slaviceklaw.com
        justin@slaviceklaw.com

Richard S. Plattner (No. 005019)
**PLATTNER VERDERAME, PC**
316 East Flower Street
Phoenix, Arizona 85012
Telephone: (602) 266-2002
Fax: (602) 266-6908
Email: rplattner@pvazlaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramona Romes, | **Case No.  24-cv-00176-SMB** |
| Plaintiff, | |
| vs. | **SECOND AMENDED** |
| | **CLASS ACTION COMPLAINT** |
| Garrison Property and Casualty Insurance Company, a Texas corporation, | |
| Defendant. | |

Plaintiff Ramona Romes for her Complaint against Defendant Garrison Property

and Casualty Insurance Company ("USAA") alleges as follows:

## I.  THE PARTIES

1.  Ramona Romes is a married woman.  At all relevant times, Ramona was an insured on an insurance policy with Defendant USAA providing, among other coverages, uninsured and underinsured motorist coverage.

2.  Defendant USAA is a corporation incorporated under the laws of the State of Texas, and is duly licensed to administer insurance in the State of Arizona.

## II.  NATURE OF THE ACTION

3.  This matter concerns the unlawful reduction of Uninsured Motorist benefits (UM) and Underinsured Motorist benefits (UIM) to a class of insureds entitled to the full value of their benefits on policies issued by Defendant USAA in Arizona.  Specifically, Defendant USAA, when calculating insureds damages in the UM and UIM context, uses Reduced Medical Expenses and Reduced Lost Wages in a transparent attempt to low-ball, undervalue, and underpay insureds their rightful UM and UIM benefits owed on the policy.

4.  For purposes of this Complaint, "Reduced Medical Expenses" generally refers to Defendant USAA's policy and practice of reducing an insured's injury-related medical expenses below the billed charges, which are the reasonable charges for medical care which a reasonable person might obtain because of injuries reasonably believed to have been caused by the vehicle crash, to an arbitrary amount, alleged by Defendant USAA to be the "usual and customary charges"—a health insurance industry term used to determine the amount a health insurer "allows" when paying medical providers. In other

words, even when USAA agrees the contract requires payment for medical care, USAA pays less than the charges billed to the insured.

5.    For purposes of this Complaint, "Reduced Lost Wages" generally refers to Defendant USAA's policy and practice of reducing an insured's injury-related lost wages below the gross earnings to an arbitrary net earnings, alleged by Defendant USAA to be the earnings calculated after deducting an arbitrary amount for taxes, consumption, etc.

6.    Defendant USAA's policy and practice of using Reduced Medical Expenses and Reduced Lost Wages to calculate the proper amount of UM and/or UIM benefits owed to its insureds is contrary to well-established Arizona law as well as the language of the USAA policy.  As such, the denial of benefits is unreasonable, is not "fairly debatable," and instead places Defendant USAA's own interests ahead of the class of policyholders and insureds.

7.    On August 3, 2021, Ramona Romes was driving northbound on San Tan Village Road when she was lawfully proceeding through the intersection at Greenfield Road in Gilbert, Arizona.

8.    Non-party Alexandra Casaw was travelling southbound on San Tan Village Road when she turned left in front of Ramona's vehicle causing a collision.

9.    As a direct and proximate result of the collision, Ramona suffered physical, emotional and economic injuries including, but not limited to, a traumatic brain injury.

10.    As a direct and proximate result of the collision, Ramona incurred reasonable and necessary medical expenses in excess of $30,000.

11.     As a direct and proximate result of the collision, Ramona incurred lost wages in the amount of $15,681.82.

12.     As a direct and proximate result of the collision, Ramona suffered general and hedonic damages in an amount  greater than or equal to $200,000.

13.     Ramona suffered compensatory damages exceeding $200,000 as a result of the August 3, 2021 collision.

14.     Non-party Alexandra Casaw was solely at fault for causing the August 3, 2021 collision.

15.     Non-party Alexandra Casaw held a policy with State Farm Mutual Automobile Insurance Company ("State Farm") providing bodily injury liability coverage in the amount of $100,000 per person, subject to an aggregate limit of $300,000 per collision.

16.     State Farm paid its available bodily injury liability limits of $100,000 to Ramona.

17.     Non-party Alexandra Casaw did not have any additional bodily injury liability, personal injury umbrella liability, or any other insurance coverage which may pay for the damages suffered by Ramona as a result of the collision.

18.     The sum of the limits of liability under all bodily injury liability insurance policies applicable at the time of the collision—$100,000—is less than the total damages for bodily injury—over $200,000—resulting from the August 3, 2021 collision.

19.     At the time of the collision, Ramona held a policy with Defendant USAA covering (1) her 2016 Nissan Altima; and (2) her 2006 Chevrolet Tahoe under Policy No. 05081 66 57R 7101 6, effective July 30, 2021 through September 22, 2021.  Coverage during this period consisted of, among other things, Uninsured Motorist Coverage and Underinsured Motorist Coverage on each vehicle in the amount of $100,000 per person, subject to an aggregate limit of $300,000 per collision.  A true and correct copy of the USAA policy is attached hereto as **Exhibit A**.

20.     The Insuring Agreement for Underinsured Motorist Coverage provides:

1. **We** will pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **BI** sustained by a **covered person** and caused by an auto accident.

2. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **underinsured motor vehicle**.

*See* USAA Policy at 025.[1]

21.     Ramona is a "covered person" under the terms and conditions of the Uninsured Motorist Coverage and Underinsured Motorist Coverage of the USAA policy.

22.     Ramona is legally entitled to recover compensatory damages from Non-Party Alexandra Casaw in an amount exceeding $200,000.

---

[1] Terms in **bold** are defined terms in the policy.

23.     Non-party Alexandra Casaw's vehicle is an "underinsured motor vehicle" under the terms and conditions of the USAA policy and Arizona law. *See* A.R.S. § 20-259.01(G).

24.     On June 5, 2023, Ramona submitted a claim to Defendant USAA seeking Underinsured Motorist benefits on the policy. The deadline to pay the available policy limits was July 5, 2023.

25.     The claim submitted by Ramona provided all information necessary for claim adjudication and for Defendant USAA to determine Ramona suffered compensatory damages exceeding $200,000 as a result of the collision.

26.     Thereafter, Defendant USAA offered $5,000 in UIM benefits to Ramona.

27.     When it determined the UIM benefits owed on the policy, Defendant USAA properly acknowledged that it was required to pay for all compensatory damages Ramona is entitled to recover from the underinsured motorist under Arizona law.

28.     Defendant USAA, however, then improperly and unlawfully calculated Reduced Medical Expenses as the amount of "compensatory damages" Ramona is legally entitled to recover from the underinsured motorist. *See* Letter from USAA to Richard Plattner, dated July 12, 2023, attached hereto as **Exhibit B**; *see also* Claims Message from USAA to Richard Plattner, dated September 1, 2023, attached hereto as **Exhibit C**.

29.     For example, despite Ramona establishing she is legally entitled to $30,039.26 in compensatory damages for reasonable medical expenses, Defendant USAA

improperly and unlawfully determined Ramona's compensatory damages for medical expenses was $19,178.87 in violation of the terms of its policy and Arizona law.

| Name | Treatment Start / End Date | Considered | Accepted |
|---|---|---|---|
| CHANDLER RADIOLOGY | 08/12/2021 - 08/12/2021 | $320.00 | $320.00 |
| EMERGENCY PHYSICIAN | 08/12/2021 - 08/12/2021 | $1,026.00 | $1,026.00 |
| CHANDLER REGIONAL | 08/15/2021 - 11/29/2021 | $9,507.00 | $8,448.49 |
| Cardenas, Javier | 08/24/2021 - 12/22/2022 | $7,953.00 | $5,711.84 |
| WAMART PHARMACY | 08/24/2021 - 05/16/2022 | $156.92 | $80.99 |
| POWELL, KAY | 09/01/2021 - 05/19/2022 | $1,763.00 | $1,303.00 |
| Saha, Kamala C | 02/07/2022 - 02/07/2022 | $660.00 | $0.00 |
| Simonmed Imaging | 03/24/2022 - 03/24/2022 | $595.00 | $545.55 |
| Flores, Nancy | 05/10/2022 - 05/10/2022 | $106.00 | $106.00 |
| Stevens, Shawn | 05/10/2022 - 11/10/2022 | $504.00 | $207.00 |
| PRIGATANO, DAGMAR B | 05/18/2022 - 11/15/2022 | $1,545.00 | $1,430.00 |
| | | | |
| Total | | $24,135.92 | $19,178.87 |

*See* Exhibit C, Claims Message from USAA to Richard Plattner, dated September 1, 2023.

30.     Defendant USAA selectively and arbitrarily "considered" medical expenses as "reasonable expenses" of necessary medical treatment while rejecting related treatment as unreasonable and/or unnecessary.  For example, Defendant USAA completely rejected the emergency room—Chandler Regional Medical Center—charges of $5,219.00 on August 12, 2021 as unreasonable and unnecessary while simultaneously agreeing the emergency physician and radiology charges **received at the emergency room** were reasonable and necessary.

31.     Defendant USAA's calculation of Reduced Medical Expenses is contrary to well-established Arizona law regarding the proper measure of damages for past medical expenses.

32.    Defendant USAA's calculation of Reduced Medical Expenses is not supported by any appropriate, scientific or measurable standard, and is instead an arbitrary damages amount calculated by Defendant USAA in an attempt to low-ball, undervalue and underpay UM and/or UIM benefits owed to its insureds.

33.    Defendant USAA also improperly and unlawfully calculated Reduced Lost Wages as the amount of "compensatory damages" Ramona is legally entitled to recover from the underinsured motorist.  *See* Exhibit B, Letter from USAA to Richard Plattner, dated July 12, 2023.

34.    For example, despite Ramona establishing she is legally entitled to recover $15,681.82 in compensatory damages for lost wages, Defendant USAA improperly and unlawfully determined her compensatory damages for lost wages was $13,329.55.

35.    Defendant USAA calculated Reduced Lost Wages applying an arbitrary 15% reduction for projected income taxes.  For example, Defendant USAA calculated the 15% "tax rate" without knowing Ramona's annual gross income, tax filing status (single, married filing jointly, etc.), adjusted gross income, tax credits received or deductions claimed by Ramona making it impossible to determine the correct "effective tax rate" for Ramona.  Instead, Defendant USAA picked an arbitrary and unsupported tax rate reducing Ramona's compensatory damages for lost wages.

36.    Defendant USAA's calculation of Reduced Lost Wages is contrary to well-established Arizona law regarding the proper measure of compensatory damages for past lost wages.  *See Mitchell v. Emblade*, 80 Ariz. 398 (1956) (requiring cases to be tried on

the "correct measure of damages, of which the incident of income tax has no part."); *see also Seely v. McEvers*, 115 Ariz. 171 (App. 1977) (gross pay is the proper basis for computing earnings); *Nunsuch ex rel. Nunsuch v. United States*, 221 F.Supp.2d 1027, 1036 n. 2 (D. Ariz. 2001) ("Arizona courts do not allow projected income taxes to be deducted from an award of damages.").

37.    Defendant USAA's calculation of Reduced Lost Wages is not supported by any appropriate, scientific or measurable standard, and is instead an arbitrary damages amount calculated by Defendant USAA in an attempt to low-ball, undervalue and underpay UM and/or UIM benefits owed to its insureds.

38.    Finally, despite Ramona establishing that she is entitled to no less than $200,000 in compensatory damages for general damages, Defendant USAA calculated her general damages at a reduced amount by selectively and arbitrarily using unfavorable medical records while ignoring favorable medical records.  For example, Defendant USAA cherry-picked statements from the medical records to claim Ramona had "recovered" from her traumatic brain injury while numerous other records clearly established Ramona was still suffering from symptoms related to her traumatic brain injury. The weight of all available evidence supports ongoing suffering from the traumatic brain injury, and USAA is required in good faith to consider all available evidence.

39.    As a direct and proximate result of its calculation of Reduced Medical Expenses and Reduced Lost Wages as well as its failure to properly evaluate Ramona's

compensable general damages, Defendant USAA failed and/or refused to pay the UIM benefits properly owed to Ramona on the USAA policy.

40.     To date, Ramona still has not been paid the Underinsured Motorist benefits she is entitled to receive under the terms and conditions of the USAA policy and has been damaged in an amount exceeding the minimum jurisdictional requirements of this court.

41.     Upon information and belief, Defendant USAA routinely sells Uninsured Motorist Coverage, as well as Underinsured Motorist Coverage, and benefits on policies, but fails and/or refuses to pay the proper amount of benefits owed on the policy by calculating compensatory damages using Reduced Medical Expenses and/or Reduced Lost Wages.

42.     Ramona brings this declaratory judgment claim pursuant to the Arizona Uniform Declaratory Judgment Act (A.R.S. § 12-1831 to 12-1846) and Rule 57 of the Arizona Rules of Civil Procedure.

43.     Ramona is an "insured" under the terms and conditions of the Uninsured Motorist Coverage and Underinsured Motorist Coverage of the USAA policy.

44.     Ramona contends she is entitled to full compensatory damages under Arizona law rather than the Reduced Medical Expenses and Reduced Lost Wages calculated by Defendant USAA.

45.     Defendant USAA, however, contends compensatory damages may be properly reduced using its arbitrary and scientifically unsupported damages calculations for Reduced Medical Expenses and Reduced Lost Wages.

46.    A dispute now exists between Ramona and Defendant USAA regarding the rights and obligations of the parties under the USAA policy.

47.    Due to the dispute between the parties, Ramona is entitled to a declaration of rights and responsibilities regarding the terms and conditions of the USAA policy pursuant to the Arizona Declaratory Judgment Act.

48.    Ramona seeks a declaration from this Court that she is entitled to her full compensatory damages under Arizona law rather than the Reduced Medical Expenses and Reduced Lost Wages calculated by Defendant USAA.

49.    Defendant USAA's failure to make a good faith offer and refusal to consider payment for Ramona's proper compensatory damages for her Underinsured Motorist claims constitutes a *de facto* denial of benefits owed on the USAA policy.

50.    Defendant USAA's failure to make a good faith offer and refusal to pay the contractual Underinsured Motorist benefits owed on the policy is a breach of contract.

51.    As a direct and proximate result of the breach, Ramona suffered direct and consequential damages including, but not limited to, the contractual Underinsured Motorist benefits owed under the terms and conditions of the USAA policy.

52.    In every contract of insurance, there is inherent in it the covenant of good faith and fair dealing, which requires an insurer to, among other things, conduct a reasonable investigation and make its insured aware of all available coverages on the policy—even if they are not demanded—and treat all insureds with equal consideration.

53.    Upon information and belief, Defendant USAA failed to conduct any investigation, let alone a reasonable investigation, into the medical expenses incurred by Ramona because of the collision.  Instead, Defendant USAA employed an arbitrary and scientifically unsupported calculation of her medical expenses in an attempt to lowball, undervalue and underpay the benefits properly owed on the policy.

54.    For example, despite Ramona establishing she is legally entitled to $30,039.26 in compensatory damages for reasonable medical expenses, Defendant USAA improperly and unlawfully determined Ramona's compensatory damages for medical expenses was $19,178.87 in violation of the terms of its policy and Arizona law.

55.    Moreover, Defendant USAA selectively and arbitrarily "considered" medical expenses as "reasonable expenses" of necessary medical treatment while rejecting related treatment as unreasonable and/or unnecessary.  For example, Defendant USAA completely rejected the emergency room—Chandler Regional Medical Center—charges of $5,219.00 on August 12, 2021 as unreasonable and unnecessary while simultaneously agreeing the emergency physician and radiology charges **received at the emergency room** were reasonable and necessary.

56.    Upon information and belief, Defendant USAA failed to conduct any investigation, let alone a reasonable investigation, into the lost wages incurred by Ramona as a result of the collision.  Instead, Defendant USAA employed an arbitrary and scientifically unsupported calculation of her lost wages in an attempt to lowball, undervalue and underpay the benefits properly owed on the policy.

57.     For example, despite Ramona establishing she is legally entitled to recover $15,681.82 in compensatory damages for lost wages, Defendant USAA improperly and unlawfully determined her compensatory damages for lost wages was $13,329.55.

58.     Defendant USAA calculated Reduced Lost Wages applying an arbitrary 15% reduction for projected income taxes.  For example, Defendant USAA calculated the 15% "tax rate" without knowing Ramona's annual gross income, tax filing status (single, married filing jointly, etc.), adjusted gross income, tax credits received or deductions claimed by Ramona making it impossible to determine the correct "effective tax rate" for Ramona.  Instead, Defendant USAA picked an arbitrary and unsupported tax rate reducing Ramona's compensatory damages for lost wages.

59.     Defendant USAA used these damages calculations knowing its position was wrong and was not supported by Arizona law.

60.     Defendant USAA undertook a claims handling practice of using Reduced Medical Expenses and Reduced Lost Wages in an attempt to lowball, undervalue and underpay UM and/or UIM benefits to its insureds.

61.     Defendant USAA's actions put its own interests ahead of its insureds, including Ramona, and failed to give equal consideration to their claims.

62.     Defendant USAA's failure to adequately investigate coverage is a breach of the covenant of good faith and fair dealing.

63.     Defendant USAA's failure to treat Ramona with equal consideration is a breach of the covenant of good faith and fair dealing.

64.    Defendant USAA's failure to make a good faith offer is a breach of the covenant of good faith and fair dealing.

65.    Defendant USAA's failure to pay the contractual Underinsured Motorist benefits owed under the terms and conditions of the USAA policy is a breach of the covenant of good faith and fair dealing.

66.    Defendant USAA's refusal to pay the proper benefits owed is contrary to well-established Arizona law as well as the language of the USAA policy.  As such, Defendant USAA's coverage position is unreasonable, is not "fairly debatable," and instead places Defendant USAA's own interests ahead of its insureds, including Ramona.

67.    As a direct and proximate result of Defendant USAA's breach of the covenant of good faith and fair dealing, Ramona suffered damages, including, but not limited to, the contractual benefits owed on the policy.

68.    Upon information and belief, Defendant USAA acted with a consistent pattern to undermine the security of its own insurance policy to the detriment of its insureds, including Ramona, to the extent that it constitutes a conscious disregard of the substantial likelihood that such conduct is likely to cause harm and constitutes conduct sufficient to incur a penalty of punitive damages.  Indeed, Defendant USAA's policy of using Reduced Medical Expenses and Reduced Lost Wages was specifically developed and intended to harm its insured by lowballing, undervaluing and underpaying insureds.

69.    Ramona is, therefore, entitled to punitive damages in an amount sufficient to stop such conduct and deter such future conduct.

### III.    JURSIDICTION AND VENUE

70.    All acts alleged herein arose from occurrences within the State of Arizona.

71.    The claims are subject to the jurisdiction of the Superior Court for the State of Arizona and Ramona requests compensation in amounts above the minimum jurisdictional limits for this Court.

72.    Venue in this Court is proper pursuant to A.R.S. § 12-401.

73.    This Court has personal jurisdiction over the parties.

74.    This Court has subject matter jurisdiction under § 14(1) and § 14(3) of Article 6 of the Arizona Constitution and A.R.S. § 12-123.

### IV.    CLASS ALLEGATIONS

75.    Ramona brings this action pursuant to Rule 23 of the Arizona Rules of Civil Procedure.  She brings this action on her own behalf and on behalf of all class participants pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Arizona Rules of Civil Procedure.

76.    The class consists of the following individuals:

All persons insured under Defendant USAA policies issued in Arizona where the person made an uninsured and/or underinsured motorist claim and Defendant USAA calculated the compensatory damages using Reduced Medical Expenses and/or Reduced Lost Wages.

77.    The requirements of Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Arizona Rules of Civil Procedure are met as set forth below.

## A.    Numerosity

78.    Upon information and belief, Defendant USAA routinely calculates compensatory damages using Reduced Medical Expenses and/or Reduced Lost Wages, and while the exact number of class members cannot be determined, the class consists of at least hundreds of insureds.  The exact number of class members can, however, be easily calculated using documents produced by Defendant USAA.

## B.    Commonality

79.    The commonality element "requires simply that there exist questions of law or fact common to the class."  *Lennon v. First National Bank of Arizona*, 21 Ariz.App. 306, 309 (1974).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008).

80.    The legal issues are not just shared, they are virtually identical.  Specifically, the legal issue regarding the proper measure of compensatory damages under Arizona law is uniform across the class.

81.    Moreover, there are questions of law and fact common to the class, including, but not limited to, the following:

        i.    The proper calculation of compensatory damages an insured is entitled to recover from an uninsured and/or underinsured motorist under Arizona law;

ii.    Whether the USAA policy permits using Reduced Medical Expenses and/or Reduced Lost Wages to calculate compensatory damages an insured is legally entitled to recover;

iii.    Whether, through the foregoing practice, Defendant USAA breached its contract with its insureds;

iv.    Whether, through the foregoing practice, Defendant USAA violated statutes and regulations related to Unfair Claims Practices;

v.    Whether, through the foregoing practice, Defendant USAA breached the covenant of good faith and fair dealing;

vi.    Whether Ramona, and the class, are entitled to declaratory relief;

vii.    Whether Defendant USAA has an unlawful practice of lowballing, undervaluing and underpaying UM and/or UIM claims;

viii.    Whether Defendant USAA's conduct warrants compensatory damages;

ix.    Whether Defendant USAA's conduct warrants punitive damages;

x.    Whether Ramona and the class are entitled to an award of attorney's fees.

## C.    Typicality

82.    Federal law provides: "[U]nder the rule's permissive standards, representative claims are 'typical' is they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

83.     Ramona is in a factual and legal posture identical to the Class Members. She is an insured on an insurance policy with Defendant USAA wherein USAA calculated her compensatory damages using Reduced Medical Expenses and Reduced Lost Wages in an effort to lowball, undervalue and underpay the benefits properly owed.

**D.      Adequacy**

84.     Under Arizona law, the Class Attorney must be qualified, experienced and reasonably capable.  Lead Plaintiffs cannot collude with the defendants and must not have interests that are obviously antagonistic to the interests of the class they seek to represent. *See Lennon*, *supra*, at 309.  The burden of proving inadequacy is on the defendant.  *See Lewis v. Curtis*, 671 F.2d 779, 788 (3rd Cir. 1982).

85.     To determine whether obvious antagonism of interests exists, Federal courts look to whether (1) a lead plaintiff is a spouse, family member, or employee of counsel; (2) if any counsel if a class member; (3) if there are unusual bonus fees for lead plaintiffs which would create a conflict with class members; (4) whether lead plaintiffs will promptly move for certification.  *See Lyon v. State of Arizona*, 80 F.R.D. 665, 667-68 (D.Ariz. 1978).

86.     None of the Class Attorneys are members of the Class.

87.     No Lead Plaintiff is a spouse, family member or employee of the Class Attorney.

88.     Lead Plaintiffs will promptly move for certification.

89.     No bonus fees or incentives have been promised to the Lead Plaintiffs.

90.     The Class Attorneys are also qualified, experienced and reasonably capable, having litigated successfully in this area of law, and having been counsel in prior class actions.

**E.      Rule 23(B)(2)**

91.     Rule 26(b)(2) certification is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole."  Ariz.R.Civ.P. 23(b)(2).

92.     Federal law provides: "[I]n order to permit certification under this rule, the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief."  *Molski v. Gleich*, 318 F.3d 937, 647 (9th Cir. 2003).  A Rule 23(b)(2) claim is not limited solely to declaratory and injunctive relief, but such relief must predominate.  *See id.*

93.     Defendant USAA acted on grounds with general application to the Class Members: it has lowballed, undervalued and underpaid UM and/or UIM claims using Reduced Medical Expenses and/or Reduced Lost Wages in violation of Arizona law and the terms and conditions of the policy.

94.     Moreover, the declaratory relief claims predominate over the breach of contract claims, *i.e.*, there can be no relief on the breach of contract claims if the declaratory relief claims fail.

95.     The proposed Classes, therefore, meets the requirements for certification under Rule 23(b)(2).

96.     Accordingly, Ramona requests this Court certify the declaratory judgment, breach of contract and bad faith claims as a class action pursuant to Rule 23(b)(2), ARCP.

**F.    Rule 26(B)(3)**

97.     Rule 23(b)(3) certification is appropriate if "questions of law or fact common to the members of the class predominate over any questions affecting individual class members, and . . . a class action is superior to other available methods for fair and efficient adjudication of the controversy."  Ariz.R.Civ.P. 23(b)(3).

98.     With respect to predomination, the Court should certify a Class even in cases where there is a large factual variance between class members if "questions of law common to all class members" lie at the heart of the case.  *See Godbey v. Roosevelt School District*, 131 Ariz. 13, 17-18 (App. 1981).

99.     Common questions of law (*i.e.*, whether using Reduced Medical Expenses and/or Reduced Lost Wages to calculate compensatory damages is a proper measure of damages under Arizona) lie at the heart of this matter.

100.    With respect to superiority, Rule 26(b)(3) directs the Court to consider (1) the desirability of concentrating claims in this forum; (2) difficulties of management; (3) current claims by class members; (4) class members' interest in controlling their individual claims.  *See* Ariz.R.Civ.P. 23(b)(3).

101.    Arizona courts are the only desirable forum as all Class Members were insured under USAA policies issued in Arizona.

102.    The difficulty in managing the Class is minimal as all policies were issued to Class Members in Arizona, the facts related to the dispute are remarkably uniform, and the case predominately turns on one legal issue.

103.    With respect to existing Class Members' claims, Arizona courts consider "whether there is so much pre-existing litigation that a class [action] would be unproductive." *ESI*, *supra*, at 98.

104.    While there may already be some pre-existing litigation involving the dispute, those cases, upon information and belief, are few and insufficient to make a class action unproductive.

105.    With respect to Class Members' individual interests in controlling the claims, "there is no additional advantage in individual members controlling the prosecution of separate actions." *See Hanlon*, *supra*, at 1023.  Indeed, "[t]here would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *See id.*

106.    The proposed class, therefore, meets the requirements for certification under Rule 23(b)(3).

107.    Accordingly, Ramona requests this Court certify the declaratory judgment, breach of contract and bad faith claims as a class action pursuant to Rule 23(b)(3), ARCP.

## RULE 26.2 TIER DESIGNATION

Ramona reviewed the Criteria for Assigning Cases to Tiers pursuant to Rule 26.2(b) of the Arizona Rules of Civil Procedure, and hereby certifies this as a Tier 3 case.

WHEREFORE, Ramona Romes prays for Judgment against Garrison Property and Casualty Insurance Company as follows:

1. Certify this case as a class action pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Arizona Rules of Civil Procedure;

2. For breach of contract;

3. For interest on the unpaid insurance benefits rightfully owed on its policies pursuant to A.R.S. § 20-462(A);

4. For bad faith;

5. For direct and consequential damages, in an amount to be proved at trial;

6. For special damages, in an amount to be proved at trial;

7. For general damages in a fair, just and reasonable sum in excess of the jurisdictional limits of this Court;

8. For a declaration that using Reduced Medical Expenses to calculate compensatory damages owed by an uninsured motorist and/or underinsured motorist is improper, and in violation of, Arizona law;

9. For an injunction permanently enjoying USAA from using Reduced Medical Expenses to calculate compensatory damages owed by an

uninsured motorist and/or underinsured motorist when calculating compensatory damages.

10.     For a declaration that using Reduced Lost Wages to calculate compensatory damages owed by an uninsured motorist and/or underinsured motorist is improper, and in violation of, Arizona law;

11.     For an injunction permanently enjoying USAA from using Reduced Lost Wages to calculate compensatory damages owed by an uninsured motorist and/or underinsured motorist when calculating compensatory damages.

12.     For costs incurred herein;

13.     For attorney's fees and taxable costs pursuant to A.R.S. §§ 12-341 and 12-341.01;

14.     For punitive damages in a fair, just and reasonable sum;

15.     For pre- and post-judgment interest at the prevailing statutory rate per annum; and

16.     For such other and further relief as this Court may deem just and proper.

DATED this 19th day of March, 2024.

                                        **THE SLAVICEK LAW FIRM**

                                        */s/ Justin Henry*
                                        Justin Henry
                                        *Attorneys for Plaintiffs*