**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramona Romes, | No. CV-24-00176-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Garrison Property and Casualty Insurance Company, | |
| Defendant. | |

Pending before the Court is Plaintiff's Motion to Certify Questions to the Arizona Supreme Court (Doc. 21). Defendant filed a response (Doc. 24), to which Plaintiff replied (Doc. 25). The Court exercises its discretion to resolve this Motion without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). After considering the parties' arguments and relevant case law, the Court will deny the Motion.

**I.   BACKGROUND**

This case arises from an insurance coverage dispute. (Doc. 1-1.) On August 3, 2021, Plaintiff was involved in a car accident. (Doc. 13 at 3 ¶¶ 7–9.) The non-party that hit Plaintiff was insured, and her policy paid its available bodily injury liability limits of $100,000 to Plaintiff. (*Id.* at 4 ¶ 14.) Plaintiff asserts that this amount was insufficient to cover her injuries. (*Id.* ¶ 18.) In turn, Plaintiff filed a claim with her own insurer, Garrison Property and Casualty Insurance Company ("USAA") for Underinsured Motorist Benefits ("UIM"). (*Id.* at 6 ¶ 24.) Plaintiff paid for UIM coverage through her policy. (*Id.* at 5 ¶ 19.) After reviewing Plaintiff's documentation to support $30,039.26 in medical

expenses and $15,681.82 in lost wages, USAA reduced these charges to $19,178.87 and $15,681.82, respectively. (*Id.* at 6–8, ¶¶ 13, 29, 34.) Then, Defendant offered $5,000 in UIM benefits to Plaintiff. (*Id.* at 6 ¶ 26.) Plaintiff alleges although USAA acknowledged that it was "required to pay for all compensatory damages," they improperly and unlawfully failed to fully cover her medical expenses and lost wages. (*Id.* ¶ 27.) Plaintiff further alleges that USAA's calculations are unsupported and are an "attempt to low-ball, undervalue and underpay UM and/or UIM benefits owed to its insureds." (*Id.* at 8 ¶ 32.) Ultimately, Plaintiff asserts that "it is *per se* unlawful to calculate compensatory damages for incurred medical expenses by using amounts less than the billed charges and calculating lost earnings using post-tax wages." (Doc. 21 at 5.)

On December 18, 2023, Plaintiff filed her Complaint in Maricopa County Superior Court, seeking a declaratory judgment and alleging breach of contract and bad faith. (Doc. 1-1.) She also seeks to represent a class of insureds that also received allegedly unlawfully calculated reduced medical expenses or reduced lost wages. (*Id.* at 12 ¶ 60.) Defendant then removed this action to federal court (Doc. 1), and Plaintiff eventually filed a Second Amended Complaint (Doc. 13). Now, Plaintiff seeks to certify two questions to the Arizona Supreme Court. (Doc. 21.)

**II.    LEGAL STANDARD**

Arizona law provides a mechanism to certify questions of law to the Arizona Supreme Court. Ariz. R. Sup. Ct. 27. The applicable statute states:

> The supreme court may answer questions of law certified to it by ... a United States district court . . . when requested by the certifying court if there are involved in any proceedings before the certifying court questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the intermediate appellate courts of this state.

Ariz. Rev. Stat. § 12-1861. Certification of a question is not obligatory merely because state law is unsettled. *McKesson v. Doe*, 592 U.S. 1, 5 (2020). Rather, the decision

to rule on the question or certify falls within the Court's discretion. *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974). If the Court chooses to rule on the question, it "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Ariz. Elec. Power Coop. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). Therefore, the Court looks to factors such as the complexity of the issue, the availability of precedent from lower courts or other jurisdictions, and the magnitude of disagreement on the issue to determine whether certification is appropriate. *See id.*; *see also Rigden v. United States*, 795 F.2d 727, 735 n.6 (9th Cir.1986).

## III. DISCUSSION

At this juncture, Plaintiff seeks to certify two questions to the Arizona Supreme Court:

> (1) When determining compensatory damages, what is the proper method for calculating incurred expenses for reasonable and necessary medical care, treatment, and services already incurred?
> (2) When determining compensatory damages, what is the proper method for calculating past lost earnings?

(Doc. 21 at 1–2.) Plaintiff contends that both questions are unresolved threshold legal issues that determine the amount of compensatory damages that Plaintiff is legally entitled to recover. (*Id.* at 7.) Defendant counters that the questions do not raise unsettled questions because Arizona courts routinely reject post-tort billed medical expenses as damages and leaves the final calculation to the jury. (Doc. 24 at 3–6.) Defendant also asserts that the second question is unnecessary because the appropriate recovery for past lost wages is also a question of fact for the jury. (*Id.* at 14.)

### A. The First Question

The Court begins with the general principles of tort damages set forth by the Arizona Supreme Court. "In an action for personal injuries, the law does not fix precise rules for the measure of damages but leaves their assessment to a jury's good sense and unbiased judgment." *Meyer v. Ricklick*, 409 P.2d 280, 282 (Ariz. 1965). In applying this principle,

the *Meyer* court further held that a jury can limit their verdict through finding that "the medical expenses [plaintiff] allegedly incurred were not proven as reasonable" and "that [plaintiff's] loss of earnings were not as much as she asserted," and even "that some part of such medical expense and loss of earnings" may have been due to a plaintiff's preexisting medical conditions or a prior accident. *Id.* This, of course, directly contradicts Plaintiff's contention that a tort victim or underinsured motorist is entitled to their full billed medical expenses as a matter of law. Under this fundamental principle of Arizona tort law, it is up to the jury to hear evidence and weigh the reasonability of the claimed damages. The jury makes the ultimate determination on whether any claimed medical expenses and their impact on compensatory damages are reasonable.

This rule regarding reasonability has never been called into question. Instead, it has been reaffirmed and shaped by numerous Arizona Court of Appeals cases. The most salient of these cases is *Larsen v. Decker*, 995 P.2d 281 (Ariz. Ct. App. 2000). The *Larsen* court held that a plaintiff cannot *solely* rely on medical records and bills to establish the reasonableness of medical expenses. *Id.* at 285–86. Instead, a plaintiff must provide "other evidence"—such as expert testimony or direct plaintiff testimony—to establish the reasonableness of the claim medical bills. *Id.* (citing *Patterson v. Horton*, 929 P.2d 1125, 1130 (Wash. Ct. App. 1997)). In other words, without additional evidence supporting reasonableness, medical bills cannot even be *presented* to the jury, and therefore the jury cannot consider them when calculating damages.

This rule was recently reaffirmed in *Benedict v. Total Transit, Inc.*, 499 P.3d 339 (Ariz. Ct. App. 2021). There, the court affirmed the trial court's decision to allow a plaintiff's neurology expert to testify that plaintiff's medical charges were reasonable. *Id.* at 346. The court reasoned that prior case law, namely *Larsen*, established that plaintiffs must offer "other evidence" that the expenses were reasonable, and that the expert's testimony provided this "other evidence" that a plaintiff must provide. *Id.* Additionally, the court noted that the expert was "aware of amounts billed for various procedures and treatments" and that it was within the jury's discretion to decide how much weight to give

this testimony. *Id.* This analysis bolstered both the *Meyer* tort principles and *Larsen*'s "other evidence" rule.

The Arizona Court of Appeals again affirmed this principle in *Fadely v. Encompass Health Calley of Sun Rehabilitation Hospital*, 515 P.3d 701 (Ariz. Ct. App. 2022). Citing *Larsen*, the court held that to admit the plaintiff's medical bills, the plaintiff "needed to establish (1) a casual connection between the medical bills and [Defendant's] negligent conduct, (2) the treatment was necessary, and (3) the expenses were reasonable." *Id.* at 709. The *Fadely* court used this standard to reverse the trial court's decision admitting the bills. *Id.* The court reasoned that the plaintiff had not offered any evidence to link these bills to the defendant's wrongful conduct or established which treatments shown in the bills addressed the plaintiff's new injuries "versus her preexisting comorbidities." *Id.* Therefore, the court held that the bills failed the causation prong. *Id.* Although the analysis focused on causation, it reaffirms the point that only *reasonable* medical expenses are recoverable. Those are the expenses that Plaintiff can admit with the requisite support, and ultimately recover if awarded by the jury. In other words, if a plaintiff cannot even admit medical bills at trial without support for their reasonableness, those same bills cannot serve as acceptable stand-ins for damage amounts that fall outside the jury's reach.

In addition to being applied by Arizona state courts, Arizona federal courts have also routinely applied this principle. Plaintiff points out that these federal cases are not controlling precedent. (Doc. 25 at 6.) Although they are not controlling, they remain persuasive authority and provide examples of federal judges analyzing Arizona case law. In fact, many federal cases apply *Larsen* and its progeny. *See, e.g.*, *Kinsel v. BMW of N. Am. LLC*, No. CV-20-08296-PCT-DJH, 2024 WL 113305, at *1–2 (applying *Fadely* and requiring a causal connection between the records and the auto accident to admit medical records and bills); *Simington v. Silver Spur MHP LLC*, No. CV-20-01789-PHX-ESW, 2022 WL 16550396, at *1 (D. Ariz. Oct. 31, 2022) (citing *Larsen* for the rule that a plaintiff must show that expenses were reasonable and necessary, but denying testimony about the expenses on another ground); *Lind v. United States*, No. CV 13-32-TUC-JAS, 2017 WL

10237337, at *7–8 (D. Ariz. Sept. 22, 2017) (favorably citing and applying *Larsen*).

Of all the federal cases, *Wikler v. Privilege Underwriters Inc.*, No. CV-17-02664-PHX-GMS, 2019 WL 1294749 (D. Ariz. Mar. 21, 2019) is the most directly on point. The plaintiffs in *Wikler* argued that their billed medical costs were fully and automatically compensable under their UIM policy. *See id.* at *4. The court, citing *Larsen*, rejected this argument and held that the plaintiffs were required to prove that the costs were "reasonable and necessary." *Id.* The court also reasoned that the billed rates, even if they were the standard rates of the relevant regulatory authorities, were not reasonable *per se* in a tort context with compensatory damages. *Id.* Therefore, the court determined that whether the bills were "reasonable and necessary" remained a "jury question." *Id.* at *5. This Court agrees with *Wikler*'s analysis and application of relevant Arizona law.

Here, Plaintiff alleges that Defendant's practice is to reduce billed medical charges to the "usual and customary charges—a health insurance industry term used to determine the amount a health insurer allows when paying medical providers. In other words, even when [Defendant] agrees the contract requires payment for medical care, [Defendant] pays less than the charges billed to the insured." (Doc. 13 at 2–3 ¶ 4.) Plaintiff further asserts that Defendant cherry-picked statements from her medical records to claim she had recovered from her alleged traumatic brain injury and simply discarded other billed charges without considering all available evidence. (*Id.* at 9 ¶ 38.) Therefore, Plaintiff seeks a declaratory judgment that "she is entitled to her full compensatory damages under Arizona law rather than the Reduced Medical Expenses . . . calculated by Defendant USAA." (*Id.* at 11 ¶ 48.)

As expressed through the case law, post-tort billed medical expenses are not an appropriate measure of damages. Other evidence, often through the form of testimony, is needed to establish the reasonableness and necessity of the billed charges—often through exploring their causal connection to the alleged injury. Upon hearing this evidence, the jury can ultimately decide which charges were in fact reasonable and necessary and reflect that judgment in their award of compensatory damages. After all, a plaintiff's recovery in

a tort suit is designed to be limited to the harm actually caused by the tortfeasor. Any rule that automatically entitles a plaintiff to the full "billed charges" of medical care violates this principle. Plaintiff is also correct that under Arizona law, a tortfeasor is liable for all harm that he or she causes. But the mere submission of a medical bill is insufficient proof of a harm. It is up to the jury to weigh the evidence and decide what charges, if any, warrant compensatory damages.

In short, there is no *per se* rule establishing a floor of recovery based solely on the billed medical expenses in Arizona. Defendant is permitted to challenge the reasonableness of the medical expenses and how they are linked to the claimed injuries. If Plaintiff can show through "other evidence" that the medical expenses were "reasonable and necessary results of the auto accident" then the jury can consider these expenses in their potential award of damages. *Larsen*, 995 P.2d at 285–86. Accordingly, the Court will not certify this question to the Arizona Supreme Court.

### A. The Second Question

Plaintiff's second question follows a similar analysis. Here, Plaintiff alleges that Defendant applied an arbitrary 15% reduction for projected income taxes from Plaintiff's wages. (Doc. 13 at 8 ¶ 35.) Plaintiff contends that when applying this rate, Defendant did not know Plaintiff's annual gross income, tax filing status, adjusted gross income, tax credits received or deductions claimed, thereby making it impossible to determine her correct effective tax rate. (*Id.*) Therefore, Plaintiff alleges that Defendant simply picked an unsupported tax rate when reducing Plaintiff's claimed damages. (*Id.*) Plaintiff seeks declaratory judgment that "she is entitled to her full compensatory damages under Arizona law rather than the. . . Reduced Lost Wages calculated by Defendant USAA." (*Id.* at 11 ¶ 48.)

Plaintiff argues that under Arizona law, "gross pay—rather than net pay after deducting taxes—is the proper measure on damages for calculating lost earnings." (Doc. 21 at 13) (citing *Mitchell v. Emblade*, 298 P.2d 1034 (Ariz. 1956)). Plaintiff then points to *Seely v. McEvers*, 564 P.2d 394 (Ariz. Ct. App. 1977), in which the Arizona Court of

Appeals reaffirmed this principle and held that "evidence of income taxes or deductions should not be allowed for the purpose of reducing the amount of damages." (Doc. 21 at 13) (citing *Seely*, 564 P.2d at 397). Defendant argues that *Seely*'s logic is limited to future earnings—a reading supported by federal cases analyzing *Seely*. (Doc. 24 at 14–16.) The Court agrees with Defendant.

Put simply, the relevant case law focuses on calculating tax consequences of future, not past, earnings. In *Seely,* the Arizona Court of Appeals adopting the majority rule stating that "income tax consequences should not be taken into consideration in arriving at damages for loss of *future* earnings or for impairment of *future* earning capacity. Rather the award of damages should be based upon a plaintiff's gross earnings." 564 P.2d at 397 (emphasis added). The court further held that "gross pay and not net or 'take home' pay is the proper basis for computing loss of *future* earnings, and that evidence of income taxes or deductions should not be allowed for the purpose of reducing the amount of damages." *Id.* (emphasis added). The court reasoned that in these circumstances "the amount of taxes is too conjectural and would only unduly complicate and confuse the damages issue but overshade the basic issue of liability." *Id.*

A federal court analyzing *Seely* drew the same conclusion. *See Walton v. Bridgestone/Firestone, Inc.*, No. CV-05-3027-PHX-ROS, 2009 WL 2778441 (D. Ariz. Jan. 16, 2009). The *Walton* court noted that calculation of future tax burdens is not useful because future tax rates are difficult to predict. *Id.* at *3. However, the court contrasted this scenario with tax rates that have been established for the earnings period in question. *Id.* The Court agrees with this distinction. Calculating a plaintiff's tax bracket from prior years—in which all the data is readily available—is significantly less complicated than projecting future tax liabilities. That is the situation Plaintiff is faced with here. Considering these issues will not unduly complicate damages calculations or confuse the issues. *See* Seely, 564 P.2d at 397. Much like billed medical charges, appropriate recovery for past lost wages—including any tax consequences—is an appropriate question of fact for the jury. There is no *per se* rule establishing a set recovery of past wages without any

consideration of tax implications. The Court will not certify this question to the Arizona Supreme Court.

In short, measuring compensatory damages for incurred medical expenses or past lost wages remains within the province of the jury. The relevant case law is clear, and there is no unsettled question of law requiring the intervention of the Arizona Supreme Court.

### IV. CONCLUSION

For the above reasons,

**IT IS HEREBY ORDERED denying** Plaintiff's Motion to Certify Questions to the Arizona Supreme Court (Doc. 21).

Dated this 24th day of June, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge