**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramona Romes, | No. CV-24-00176-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Garrison Property and Casualty Insurance Company, | |
| Defendant. | |

Before the Court is Defendant Garrison Property and Casualty Insurance Company's Motion to Strike or Dismiss Plaintiff's Class Allegations and Memorandum in Support (Doc. 15). Plaintiff Ramona Romes filed a Response (Doc. 22), to which Defendant filed a Reply (Doc. 23). Although Defendant requested oral argument, the Court will exercise its discretion to resolve this Motion without oral argument, finding that it is unnecessary. *See* LRCiv 7.2(f). The Court having considered the parties' briefings and relevant case law will grant the Motion, in part, as to the class allegations relating to the breach of contract claim, declaratory relief, and injunctive relief.

**I.    BACKGROUND**

Plaintiff was involved in a car accident where she alleges sustaining physical, emotional, and economic injuries that entitle her to damages, including reasonable and necessary medical expenses exceeding $30,000, lost wages $15,681.82, and hedonic damages equal to or exceeding $200,000. (Doc. 13 ¶¶ 9–13.) The party at fault's insurer paid the applicable policy limit of $100,000 for Plaintiff's injuries. (*Id.* ¶¶ 15–16.) The

1  party at fault did not have additional bodily injury coverage, a personal liability umbrella
2  coverage, or any other coverage to compensate the injuries. (*Id.* ¶ 17.) At the time of the
3  accident, Plaintiff held a policy with Defendant covering two of her vehicles, including
4  uninsured and underinsured motorist coverage ("UIM") on each for up to $100,000 per
5  person. (*Id.* ¶ 19.) Plaintiff submitted a claim to Defendant seeking UIM benefits for the
6  medical expenses and lost wages. (*Id.* ¶ 24.) Defendant conceded some coverage and
7  calculated her medical expenses as $19,178.87, which it considered representative of
8  "reasonable expenses" based on "usual and customary charges," and reduced the claimed
9  lost wages by 15% to $13,329.55 in accounting for projected income taxes. (*Id.* ¶¶ 4–5,
10 29, 34–35.) Plaintiff coins these reduction practices as "Reduced Medical Expenses" and
11 "Reduced Lost Wages," respectively. (*Id.* ¶¶ 4–5.)

12       Plaintiff thereafter filed the instant Complaint, alleging she is entitled to the full
13 damages, rather than Defendant's reduced amounts, and seeks to represent a class of all
14 Defendant's insureds who made a UIM claims and received a calculation of damages with
15 the same reductions. (*Id.* ¶¶ 75–76.) Regarding the class, Plaintiff alleges it consists of:
16 "All persons insured under Defendant USAA policies issued in Arizona where the person
17 made an uninsured and/or underinsured motorist claim and Defendant USAA calculated
18 the compensatory damages using Reduced Medical Expenses and/or Reduced Lost
19 Wages." (*Id.* ¶ 76.) Defendant moved to strike or dismiss the class allegations. (Doc. 15.)

20 **II.     LEGAL STANDARD**

21       A court "may order stricken from any pleading . . . any redundant, immaterial,
22 impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An order striking a class
23 allegation is the functional equivalent to an order denying class certification. *Microsoft*
24 *Corp. v. Baker*, 582 U.S. 23, 34 n.7 (2017). Motions to strike class allegations are
25 particularly disfavored because it is rarely easy to determine whether allegations are
26 meritorious before discovery. *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz.
27 2016). "Nonetheless, class allegations may be stricken when it is clear from the face of the
28 complaint that no class can be certified." *Id.*; *see also Sanders v. Apple Inc.*, 672 F. Supp.

2d 978, 990 (N.D. Cal. 2009); *Baughman v. Roadrunner Communications, LLC*, CV-12-00565-PHX-SMM, 2013 WL 4230819, at *2 (D. Ariz. Aug. 13, 2013) ("[P]ursuant to Fed. R. Civ. P. 23(c)(1)(A), 23 (d)(1)(D), and (12)(f), this Court may 'strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.'" (citation omitted)).

The Court accepts the non-moving party's well-pleaded facts as true and draws reasonable inferences in favor of that party. *Cheatham*, 161 F. Supp. 3d at 834. The plaintiff bears the burden to establish Rule 23 prerequisites for class certification or that discovery will produce persuasive information substantiating the class allegations. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); *but see Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, No. SACV 14-1093 AG (ANx), 2015 WL 12912337, at *4 (C.D. Cal. Mar. 15, 2015 (noting the need for discovery should not permit a fishing expedition during discovery). Plaintiffs seeking class certification must show that they have met the requirements of the four subsections in Rule 23(a) and at least one subsection of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). "However, in the context of a motion to *strike* class allegations, in particular where such a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is *not* certifiable." *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1340–41 (D. Or. 2014), *aff'd*, 716 F. App'x 729 (9th Cir. 2018) (emphasis in original). Relevant here, Rule 23(a)(2) requires "there are questions of law or fact common to the class," and Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**III.    DISCUSSION**

Defendant argues that, on the face of Plaintiff's Complaint, Plaintiff cannot satisfy the commonality requirements of Rule 23(a)(2) and predominance requirements of Rule 23(b)(3). (Doc. 15 at 5.) Given that Plaintiff need only establish one Rule 23(b)

1 requirement, Defendant clarifies that it seeks Plaintiff's allegations falling under Rule 23(b)(3) be stricken from her Complaint; but also, Plaintiff fails to meet Rule 23(b)(2), relating to declaratory relief, because she does not primarily seek such relief. (*Id.* at 16.) In response, Plaintiff mischaracterizes Defendant's Motion as only challenging commonality and predominancy, which she argues are met, but fails to address its argument regarding declaratory relief. (Doc. 22 at 6.)

### A. Commonality

"[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) (alteration in original) (citation omitted); *but see id.* ("If the central issues in the case are common and predominate, then a damages class action can be permissible even if some other issues like damages will have to be tried individually."). A common question is one where a "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–350 (2011) ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury . . . . Their claims must depend on a common contention . . . capable of classwide resolution . . . .'"). The "district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir.), *cert. denied sub nom.*, 143 S. Ct. 424 (2022) (emphasis in original). Satisfying this requirement poses a relatively light burden that does not require all questions of law and fact raised in the dispute be common or to predominate over individual issues. *Ambrosio v. Progressive Preferred Ins. Co.*, No. CV-22-00342-PHX-SMB, 2024 WL 915184, at *4 (D. Ariz. Mar. 4, 2024) (cleaned up).

Plaintiff's UIM coverage provides for "compensatory damages which a covered person is legally entitled to recover." (Doc. 13-1 at 25.) Plaintiff's commonality

allegations to support the breach of this provision are essentially two-fold: whether Defendant has a uniform application of a policy or practice of (1) reducing medical expenses below legally entitled compensable damages, and (2) deducting income taxes from lost wages below what an insured is legally entitled to recover. (Doc. 13 ¶ 81.) Defendant's argument primarily focuses on the predominance issue but phrases the common question issue into a question of whether those policies *per se* violate state law. (*See* Doc. 15 at 6–7.) And as such, contends that it is not unlawful *per se* to offer an insured less than their billed medical expenses or post-tax wages, thus each proposed class member will have to establish a breach of contract or bad faith independently. (Doc. 15 at 4). Plaintiff, in turn, argues whether Defendant failed to pay insureds what they are legally entitled is a common question and there is zero evidence that Defendant pays anything but the reduced medical expenses and lost wages. (Doc. 22 at 17.) In reply, Defendant argues that discovery would disprove Plaintiff's ability to certify her class. (Doc. 23 at 1.)

In Plaintiff's Complaint, she alleges Defendant uses what are "usual and customary charges" to determine the reasonable charges for medical care. (Doc. 13 ¶ 4.) Plaintiff contends that "[u]sing billed charges is the only way to calculate compensatory damages for incurred medical expenses; using any other method *per se* unlawful." (Doc. 22 at 6.) In doing so, Plaintiff postulates that *Lopez v. Safeway Stores, Inc.*, 129 P.3d 487 (Ariz. Ct. App. 2006) rejected using a "reasonable value" for the proper calculation of medical expenses, instead holding a plaintiff is entitled to "recover the full of her reasonable medical expenses for which she was charged," i.e., billed. (*Id.* at 7.) Defendant argues *Lopez* relates to the collateral source rule, in that it holds total or partial compensation for an injury from a collateral source independent of the tortfeasor does not reduce the recoverable amount from that tortfeasor. (Doc. 23 at 6.); *see* 129 P.3d at 491. Defendant notes that the parties in *Lopez* stipulated the medical expenses were reasonable and customary for trial purposes, *see* 129 F.3d at 491, and the court did not address the necessary causal connection between the medical bills and the negligent conduct by showing the expenses are reasonable and necessary. (Doc. 23 at 6–9.)

Defendant is correct that Plaintiff misconstrues *Lopez*. The Arizona Court of Appeals did not squarely address the confines of what constitutes the "reasonable value" of medical expenses due to the parties' stipulation. *See Lopez*, 129 P.3d at 491 n.4. But underpinning its collateral source discussion is its recognition that "plaintiffs are entitled to claim and recover the full amount of *reasonable medical expenses charged*, *based on the reasonable value of medical services rendered*, including amounts written off." *Id.* at 495–96 (emphasis added). The key is reasonableness. This is consistent with a plaintiff's burden in proving the medical bills reasonable and necessary by demonstrating "(1) a causal connection between the medical bills and [the] negligent conduct, (2) the treatment was necessary, and (3) the expenses were reasonable." *Fadely v. Encompass Health Valley of Sun Rehab. Hosp.*, 515 P.3d 701, 709 (Ariz. Ct. App. 2022), *review denied* (Dec. 6, 2022) (citing *Larsen v. Decker*, 995 P.2d 281, 285–86 (Ariz. Ct. App. 2000); *Wikler v. Privilege Underwriters Inc.*, No. CV-17-02664-PHX-GMS, 2019 WL 1294749, at *4 (D. Ariz. Mar. 21, 2019) ("To recover past medical expenses, a plaintiff must show that the expenses were reasonable and necessary." (citing *Larsen*, 995 P.2d at 286–86)).

Accordingly, Plaintiff's is incorrect that Arizona law requires viewing the amounts billed as the reasonable medical expenses and not accepting those amounts in a *per se* violation of the law—billed medical expenses certainly could include unreasonable charges that are untethered from the alleged injury. As noted, Plaintiff does assert that Defendant determines what are "usual and customary charges" to assess the reasonable medical expenses of an insured. It is possible that discovery may reveal that this practice arbitrarily reduces medical expenses beyond what is reasonable in breach of the insurance contract. This may invite individual inquiries into what is reasonable, but that is an issue of predominance, not commonality. *See also Olean Wholesale Grocery*, 31 F.4th at 667 (noting the Court need not "put the cart before the horse" by requiring a success on the merits showing (citation omitted)).

As to the lost wages, Plaintiff alleges Defendant reduces "gross loss wages" by using an "arbitrary net earnings" calculation which reflects a 15% reduction for projected

income taxes. (Doc. 13 ¶¶ 5, 34–35.) Plaintiff, however, goes a step too far in concluding it is a *per se* violation of Arizona law to deduct income tax from lost earnings. (Doc. 22 at 11.); *see also Romes v. Garrison Prop. & Cas. Ins. Co.*, No. CV-24-00176-PHX-SMB, 2024 WL 3183132, at *4–5 (D. Ariz. June 25, 2024). Arizona law is not so clear. At least one court in this District has found that "lost earnings calculations may incorporate income tax reductions if the income tax has been established for the earnings period in-question." *Walton v. Bridgestone/Firestone, Inc.*, No. CV-05-3027-PHX-ROS, 2009 WL 2778441, at *3 (D. Ariz. Jan. 16, 2009) (applying Arizona law). While the Arizona Court of Appeals concluded that an award of "damages for loss of *future* earnings should be based upon a plaintiff's gross earnings," and not account for income tax consequences. *See Seely v. McEvers*, 564 P.2d 394, 397 (Ariz. Ct. App. 1977) (emphasis added); *cf. Walton*, 2009 WL 2778441, at *3 (finding *Seely*'s rule on gross earnings pertained to the tax burden on future earnings in particular as they are too difficult to predict). In the absence of law on point, Arizona courts generally follow the Restatement (Second) of Torts. *Barnes v. Outlaw*, 964 P.2d 484, 486 (1998). But even the Restatement is unavailing. Regarding lost earnings, i.e., earnings that would have been earned before an award is made, the Restatement acknowledges there are conflicting reasons for accounting for income taxes, even though an injured party's tax rate can be accurately determined, and so it "expresses no opinion on the law." Restatement (Second) of Torts: Effect of Taxation § 914A cmt. c (1979).

As a general matter, "the amount of damages for personal injury is a question particularly within the province of the jury, without "fix[ed] precise rules." *Meyer v. Ricklick*, 409 P.2d 280, 281–82 (Ariz. 1965). The same is true for loss of earnings. *Jones v. Cochise County*, 187 P.3d 97, 102 (Ariz. Ct. App. 2008) (citing *Meyer*, 409 P.2d at 282). The required evidence for the amount of damages depends on the individual circumstances of a case and turns on what is reasonable under the circumstances. *Felder v. Physiotherapy Assocs.*, 158 P.3d 877, 885–87 (Ariz. Ct. App. 2007). But "[t]o sustain an award for [loss of earnings], the plaintiff must produce evidence of specific losses which are ordinarily reduced to present value." *Rossell v. Volkswagen of Am.*, 709 P.2d 517, 529 (Ariz. 1985).

This seems to suggest that income taxes could play a role in ascertaining the wages actually lost.[1]

Therefore, the Court cannot conclude under Arizona law there is a *per se* bar to removing income taxes from past lost wages. But like the reductions to medical expenses, Plaintiff alleges a uniform 15% reduction to past lost wages and whether this reduces the recoverable about below what an insured is legally entitled to recover in breach of the insurance contract presents a common question—albeit while also inviting individual inquiries into whether that is actually true for all potential class members. *See, e.g.*, *Felder v. Physiotherapy Assocs.*, 158 P.3d 877, 886–87 (Ariz. Ct. App. 2007) ("[T]he law does not fix precises rules for the measure of damages but leaves their assessment to a jury's good sense and unbiased judgement."); *see also id.* at 885 (noting once the right to damages is established, uncertainty to the amount does not preclude recovery). The inquiry then turns to whether these common questions predominate. Fed. R. Civ. P. 23(b)(3).

---

[1] The parties also debate the applicability of various cases dealing with the Federal Tort Claims Act ("FTCA"). (*See* Docs. 15 at 12; 22 at 12.) In FTCA cases, the government's liability is determined according to the laws of the state where the act or omission occurred, and damages are also based on state law. *Felder v. United States*, 543 F.2d 657, 665 (9th Cir. 1976) (citing 28 U.S.C. §§ 1346(b), 2674). Courts have grappled with *Mitchell v. Emblade*, 298 P.2d 1034, 1037 (Ariz. 1956), which stated for "a correct measure of damages, . . . incident of income tax has no part." *See, e.g.*, *Felder*, 543 F.2d at 667. In *Felder*, the court concluded "[t]he law of Arizona on the incidence of income taxes in tort damage awards is not as clear as it might be." *Id.* at 666, 670 (noting the court has avoided crafting "a hard and fast rule that income taxes should not be deducted" in applying Arizona law to FTCA cases). The court held that a failure to deduct income taxes from an award in a wrongful death action, where the awarding the full income to the survivors would compensate them for amounts they could not logically or reasonably have expected to receive had the decedents lived, could result a prohibited punitive damage award under the FTCA. *Id.* at 669–70. In reaching the conclusion, the court explained such an award is "especially punitive" because the government would lose the income taxes a decedent would have paid over the years and an award for those unpaid taxes is effectively a double sanction. *Id.* at 670 n.17. But ultimately, what constitutes "fair and just" damages is a question of fact, including whether to include or offset income taxes, and is left to the discretion of the trial court. *Id.* at 670.; *see also Shaw v. United States*, 741 F.2d 1202, 1206 (9th Cir. 1984) (reasoning the "necessary analog" to *Felder*'s mandate for the deduction from lost earnings is to inflate a lump sum award to account for the income tax that would have been paid on the earnings of the total award, otherwise discounting the award to its present value penalizes a plaintiff); *cf. Nunsuch ex rel. Nunsuch v. United States*, 221 F. Supp. 2d 1027, 1036 (D. Ariz. 2001) (noting under *Shaw*'s test, the amount deducted will not necessarily equal the amount added). So, it appears, although "Arizona allows unlimited recovery for actual damages, . . . lost earnings, and diminished earning capacity," *Wendelken v. Superior Court*, 671 P.2d 896, 899 (Ariz. 1983), survivors in wrongful death actions are limited to a reasonably expected recovery of post-tax dollars, *Felder*, 543 F.2d at 669. And FTCA cases are relevant to the extent they interpret Arizona law. It is generally true that Plaintiff would not derive a benefit from values from wages owed in taxes, but also, allowance of a reduction here would allow Defendant to limit its liability on account of income taxes without being based on double sanction concerns. The only conclusion the Court can glean here, is that the incident of income taxes to an award for lost wages is a fact intensive inquiry and not categorically barred under Arizona law.

**B. Predominance**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Courts must first characterize the issues in the case as common or individual and then weigh which predominate. *See Olean Wholesale Grocery*, 31 F.4th at 668 ("When individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the court determine whether individualized inquiries about such matters would predominate over common questions."). The "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citing 2 W. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012) ("Rubenstein")). Importantly, courts have noted that these inquiries are "not an exact science." *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020) (citation omitted) ("This task is not an exact science.")

"[A]n individual question is one 'where members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue susceptible to generalized, class-wide proof.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (second alteration in original) (quoting *Tyson Foods*, 577 U.S. at 453). "The analysis is pragmatic and is more qualitative than quantitative." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (citing Rubenstein, § 4.50); *see also Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 674 F. Supp. 3d 799, 819 (C.D. Cal. 2023); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1185 (N.D. Cal. 2013). Common issues will not predominate if an "overarching common issue breaks down into unmanageable variety of individual legal and factual issues." *Kang v. Credit Bureau Connection, Inc.*, No. 118CV01359AWISKO, 2022 WL 658105, at *6 (E.D. Cal. Mar. 4, 2022) (quoting Rubenstein, § 4.50).

"To ensure that common questions predominate over individual ones, the court must 'ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct.'" *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (quoting *Torres*, 835 F.3d at 1138). However, a plaintiff having to prove individualized damages at trial does not preclude predominance. *Olean Wholesale Grocery*, 31 F.4th at 668–69 (citing *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016)). But if a plaintiff cannot provide a common method of proof to determine liability and proof of liability requires highly individualized inquiries, plaintiff cannot show common questions predominate. *Castillo*, 980 F.3d at 732.

Plaintiff alleges that the "facts related to the dispute are remarkably uniform, and the case predominately turns on one issue." (Doc. 13 ¶ 102.) As discussed, Plaintiff's *per se* arguments fail. (*See* Doc. 22 at 16–18.) But drawing Plaintiff's allegations in her favor, *see Cheatham*, 161 F. Supp. at 834, the inquiry then is based on the existence of a company policy and an application of that policy in breach of the UIM coverage provision requiring compensating Plaintiff and potential class members for unpaid but legally entitled compensatory damages. *See, e.g.*, *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1224 (9th Cir. 2024) (holding a district court correctly found a lack of predominance and denied class certification on a claim that a proposed class of employees were entitled to compensation under state law for time the employees spent off-the-clock subject to bag inspections based on a company policy because that "policy likely lends itself to highly individualized inquiries").

Defendant argues the issue here involves individualized inquiries into the liability of Defendant to each class member, not just individualized damages issues. (Doc. 15 at 6.) Defendant expounds that showing an injury would require an individualized determination for each plaintiff because the Court will have to re-litigate whether each plaintiff was paid more or less than they were owed under the insurance contract. (*Id.* at 6–7.) In response, Plaintiff argues there is zero evidence that Defendant pays anything but the Reduced

- 10 -

Medical Expenses and Reduced Lost Wages. (Doc. 23 at 17.)

Defendant primarily relies on *Lara*, where the Ninth Circuit held that a district court did not abuse its discretion in finding common questions did not predominate because the claim centered on a breach of contract or unfair trade practices, and as such each plaintiff would have to demonstrate an injury that required an individualized determination. *See* 25 F.4th at 1138. *Lara* persuasively aids in resolving this case and dealt with how an auto insurance companies valued totaled vehicles. *See id.* at 1136. In that case, state law required an insurer to pay the "actual cash value" of a vehicle, which is how much the car would have been sold for before the accident. *Id.* To make that determination, the insurer would inspect a vehicle and report its findings to a company (also a defendant in the suit) which would then prepare a valuation report on the vehicle. *Id.* The company evaluates comparable cars, accounting for make, model, condition, and features, and then adjusts the valuation to better estimate the value of the totaled car. *Id.* The court explained valuation adjustment at issue as follows:

> Used cars for sale at dealerships are usually in pretty good condition: the dealerships don't sell them otherwise, and [company] doesn't use dealerships that sell bad cars. To account for the difference between the average car owned by a private person and the cars for sale at dealerships, [company] thus reduces the totaled car's valuation. But [company] also looks at the actual pre-accident condition of the totaled car. If it was in great condition, then [company] reverses the negative adjustment and sometimes even applies a positive adjustment.

*Id.* at 1136–37. The offer given to the insured is "usually but not always based on the [company's] report." *Id.* at 1137 (noting that if the parties disagreed, there was an appraisal process provided for in the insurance contract). The insurer adjusted the plaintiff's valuation downward, without providing itemized information regarding that deduction. *Id.*

The court reasoned that determining if an injury occurred to each class member would require looking into the pre-accident value of the car and comparing it to what each person was offered to see if the offer was less or more than the actual value. *Id.* at 1139. The court rejected plaintiff's contention that these individualized issues of harm are

"damages issues" that can be tried separately, instead the validity of the claims depended on an injury. *Id.* As the court tersely put it, "that's not a damages issue; that's a merits issue." *Id.* And, although some evidence relevant to the amount of the deductions might be in common among class members, much of it would not be. *Id.* at 1140. Plaintiff's claim here requires inquiring into the individual damages of the proposed class members to determine whether Defendant in fact breached the insurance contract. That is a merits issue.

To support Plaintiff's allegations, she points to Defendant rejecting emergency room charges as unreasonable or unnecessary but also allowing charges for emergency physician and radiology charges received at that emergency room. (Doc. 13 ¶ 55.) Defendant assessed medical expenses by what are on "usual and customary charges," (*see id.* ¶ 4), but application of that policy raises individualized questions about the reasonableness of the reductions compared to what is "usual and customary" and the individual circumstances of a proposed class member. *See Lopez*, 129 F.3d at 495–96. Defendant may use a uniform policy overall, but that fact alone does not resolve the liability. *See Schubert v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV-14-06221-MWF-JC, 2015 WL 13916131, at *3 (C.D. Cal. Oct. 2, 2015) (finding a "litany of individual issues" as to whether treatments were, in part, medically necessary to entitle the plaintiff or proposed class to benefits under a health plan).

As Defendant identifies, the reasonableness of medical expenses billed requires inquiring into the insured's medical history, her injuries, necessity of the treatment, and availability of alternative procedures. (Doc. 15 at 15.) Because Plaintiff bases her claim on the reductions to the amount billed alone, the Court would likely have to engage in a highly individualized analysis to ascertain the basis for those amounts billed and the reason for reducing them. *See, e.g.*, *Miles*, 89 F.4th at 1225 (concluding such a fact-intensive inquiry into each class member's conduct would mean that individual issues would "overwhelm" the common ones). Moreover, Plaintiff's proposed class includes "[a]ll persons insured" that made a UIM claims that were reduced under the alleged policies.

(Doc. 13 ¶ 76.) The class is not limited to those that suffered an injury and may include reductions that were entirely reasonable. Although not dispositive on its own, the possible lack of injury to class members is indicative the common questions do not predominate. *See Castillo*, 980 F.3d at 733. But to be clear, this is not an issue of assessing individualized damages, the issue is the variable and fact intensive analysis for each proposed class member to assess liability in the first place.

The income tax reduction on lost wages suffers a similar flaw. For high earners, the reduction may actually be lower than the individual's marginal tax rate resulting in no harm. *See, e.g.*, *id.* To ascertain whether a proposed class member was paid less than they were entitled would also require inquiring into their independent tax statuses, including for example, type of employment, applicable tax rate, applicable deductions, and streams of income. Moreover, the actual evidence required to prove harm and thereby a breach depends on reasonableness and the individual circumstances of each proposed class member. *See Felder*, 158 P.3d at 885–87; *Rossell*, 709 P.2d at 529. These individualized issues and inquiries, although related to damages, ultimately turn on the merits of the breach and nullify any potential predominant common question. *See Miles*, 89 F.4th at 1224.

Therefore, the Court finds Rule 23(b)(3) predominance is not satisfied and further discovery would only emphasize this case is incapable of class-wide resolution because of the individualized proof required for a potential class member to prove harm. The Court will strike those allegations.

**C. Rule 23(b)(2) Certification**

"Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011). Although Plaintiff requests declaratory relief, it is not the primary relief sought and Plaintiff seemingly abandoned his claim by ignoring Defendant's arguments on the matter. For these reasons, the Court will not engage in analysis under this rule. Moreover, a prospective injunction is inappropriate because Plaintiff's proposed class

relates to individuals who have made claims in the past who had their recovery reduced according to Defendant's practices and does not relate to future claims. *See Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2017). The Court will strike those allegations.

### D. Remaining Claims

Defendant only addresses Plaintiff's common questions as applied to her breach of the covenant of good faith and fair dealing and unfair claims practices claims in passing under the umbrella of a "bad faith" allegation. (*See* Doc. 15 at 1, 4, 10.) Defendant appears to relegate its argument on the bad faith issue to a single parenthetical citation, and that citation is not dispositive. (Doc. 15 at 10.) The case Defendant cites, *Taylor v. USAA Casualty Insurance Co.*, found that an insurer did not act in bad faith by paying reduced amounts for "reasonable medical expenses" tied to statistical database to evaluate claims. No. CV-09-02117-PHX-NVW, 2011 WL 1237579, at *4–5 (D. Ariz. Apr. 4, 2011). But that case depended on reasonableness under the facts of the case and does not address the tax issue here. *See id.* The argument is not sufficiently developed to enable the Court to make a reasoned decision and Defendant does not mention the unfair claims practices claim. *See Meyer v. Brennan*, No. CV-17-00524-PHX-ROS, 2018 WL 11470351, at *2 (D. Ariz. Jan. 4, 2018). Therefore, the Court declines to strike those allegations.

### E. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** granting Defendant's Motion to Strike or Dismiss Plaintiff's Class Allegations, in part, as to the class allegations relating to the breach of contract claim, declaratory relief, and injunctive relief (Doc. 15).

Dated this 9th day of October, 2024.

Honorable Susan M. Brnovich
United States District Judge